[Civ. No. 22539. First Dist., Div. Two. Dec. 20, 1965.]

WILLIAM B. ADDIEGO et al., Plaintiffs and Appellants, v. RICHARD HILL et al., Defendants and Respondents.

Dinkelspiel & Dinkelspiel and Alan A. Dougherty for Plaintiffs and Appellants.

Johnson & Harmon, W. Glenn Harmon, J. Edward Johnson and Robert H. Johnson for Defendants and Respondents.

TAYLOR, J.—Plaintiffs, William B. Addiego and Harry J. Love, appeal from a judgment of dismissal entered after a demurrer to their third amended complaint was sustained without leave to amend. We are here concerned with the sufficiency of the third amended complaint to state a cause of action for specific performance of an alleged agreement between the parties.

The complaint alleged that plaintiffs and defendants were the owners of all the 12,000 shares of stock of Bahl Corporation; the plaintiffs owning 5,000 shares or about 42 percent; the defendants 7,000 shares or about 58 percent; that on or about October 20, 1956, the parties executed an agreement which provided as followed: "WHEREAS, each of the undersigned is desirous that ownership of said stocks and bonds shall be limited insofar as is practicable to the undersigned parties;

"Now, THEREFORE, each party to this agreement, in consideration of the promise of each other party to this agreement, does promise each other said party as follows:

"Before he sells, pledges, or otherwise hypothecates any presently owned or later acquired stocks or bonds, or other interest in said corporation, he will first offer to sell, pledge or hypothecate said stocks or bonds, or other interest in writing, to each of the undersigned on the same terms, said offer to continue for a period of 30 days.

"In any such event, should more than one of the undersigned be desirous of purchasing said stocks or bonds, the buying rights of each undersigned shall be that portion of such offered stocks or bonds as will enable each of the undersigned to maintain the same proportionate ownership of said corporation as exists at the time of the signing of this agreement."

The complaint further alleged that about March 6, 1962, plaintiffs were advised that defendants were contemplating a

sale of their 7,000 shares to one J. C. Johnson for the sum of $125,000, minus 58 percent of the corporation's tax liability, payable by the transfer of his equity of $105,000 in a certain undertaking parlor in Palo Alto, and a note for the balance of the purchase price, payable in two years, bearing 6 percent interest, payable semi-annually.[1]

The complaint also alleged that on March 8, 1962, the parties entered into a written agreement whereby defendants agreed to sell to plaintiffs their 7,000 shares of stock for $125,000, less 58 percent of the then existing and ascertained tax liability of the corporation, payable as follows: $105,000 in cash and the balance by a promissory note payable in two years, bearing 6 percent interest, payable semi-annually; that defendants refused to transfer or deliver their shares to plaintiffs and on March 15, 1962, in violation of the agreement of October 1956 and the agreement of March 8, 1962, entered into the exchange agreement with J. C. Johnson. The court sustained defendants' demurrer to the third amended complaint without leave to amend.

On appeal from a judgment sustaining a demurrer, the allegations of the complaint must be regarded as true. ■ A complaint will be held to state facts sufficient to constitute a cause of action if, upon a consideration of all of the facts stated, it appears that the plaintiff is entitled to any relief (*Augustine* v. *Trucco,* 124 Cal.App.2d 229 [268 P.2d 780]). ■ In passing upon the sufficiency of a pleading, its allegations must be liberally construed with a view to substantial justice between the parties (*Buxbom* v. *Smith,* 23 Cal.2d 535, 545 [145 P.2d 305]). ■ A demurrer does not, however, admit contentions, deductions or conclusions of facts or law which may be alleged in a complaint (*Howard* v. *City of Los Angeles,* 143 Cal.App.2d 195 [299 P.2d 294]). The right to amend a complaint after a demurrer is sustained should not be lightly denied. ■ It is, however, proper to sustain a demurrer without leave to amend when the com-

[1]While this allegation was not contained in the first cause of action of the third amended complaint, it was contained in the second cause of action thereof relative to injunctive relief and also in the first cause of action as alleged in all three prior verified complaints and thus must be considered in determining whether the demurrer to the first cause of action of the third amended complaint should have been sustained without leave to amend. On the other hand, reference by counsel in their briefs to letters and documents which are not included in any of plaintiffs' pleadings or in any way incorporated therein cannot be considered by this court in determining whether the demurrer to plaintiffs' third amended complaint was properly sustained.

plaint cannot be amended to state a cause of action (2 Witkin, Cal. Procedure (1954) p. 1498, § 506). With these well-defined rules in mind, we will proceed to examine the complaint in relation to the applicable law (*Marin* v. *Jacuzzi*, 224 Cal.App.2d 549, 552 [36 Cal.Rptr. 880]).

 The question here is whether, under the particular circumstances and the terms of the preemption agreement, plaintiffs' acceptance of March 8 was made on the same terms as the Johnson offer. Defendants argue that the agreement of October 20, 1956, contemplated trades, as well as cash sales, and that plaintiffs' acceptance offering cash instead of an equity in the property owned by Johnson was not binding on defendants. Plaintiffs argue that unless the words "same terms" as used in the agreement are reasonably construed to mean "the same or equivalent terms," the agreement can be frustrated by any offer by a third party involving a unique interest.

Section 1656 of the Civil Code provides: "All things that in law or usage are considered as incidental to a contract, or as necessary to carry it into effect, are implied therefrom, unless some of them are expressly mentioned therein, when all other things of the same class are deemed to be excluded." The modern trend of the law is to favor the enforcement of contracts and, if feasible, to carry out the intentions of the parties. Neither law nor equity requires that every term and condition be set forth in a contract. The usual and reasonable terms found in similar contracts may be considered, unexpressed provisions of the contract may be inferred from the writing, external facts may be relied upon, and custom and usage may be resorted to in an effort to supply a deficiency if it does not alter or vary the terms of the agreement (*Burrow* v. *Timmsen*, 223 Cal.App.2d 283, 288 [35 Cal.Rptr. 668]). The court should accord an interpretation which is reasonable (Civ. Code, § 1643) and which gives effect to the intent of the parties as it may be interpreted from their entire agreement rather than one which renders the contract void (Civ. Code, §§ 1650, 1652, 1655, 1656).

We recognize that courts cannot make better agreements for parties than they themselves have been satisfied to enter into or rewrite contracts because they operate harshly or inequitably. It is not enough to say that without the proposed implied covenant, the contract would be improvident or unwise or would operate unjustly. Parties have the right to make such agreements. The law refuses to read into con-

tracts anything by way of implication except upon grounds of obvious necessity. ''[I]mplied covenants are not favored in the law; and courts will declare the same to exist only when there is a satisfactory basis in the express contract of the parties which makes it necessary to imply certain duties and obligations in order to effect the purposes of the parties to the contract made'' (*Cousins Inv. Co.* v. *Hastings Clothing Co.*, 45 Cal.App.2d 141, 143 [113 P.2d 878]).

■ The rules controlling the exercise of judicial authority to insert implied covenants require several concurrent conditions: (1) the implication must arise from the language used or it must be indispensable to effectuate the intention of the parties; (2) it must appear from the language used that it was so clearly within the contemplation of the parties that they deemed it unnecessary to express it; (3) implied covenants can only be justified on grounds of legal necessity; (4) a promise can be implied only where it may be rightfully assumed that it would have been made if attention had been called to it; and (5) there can be no implied covenant where the subject is completely covered by the contract (*Cousins Inv. Co.* v. *Hastings Clothing Co., supra*, at p. 149). These conditions are required whether the contract involves real or personal property (*Walnut Creek Pipe Distributors, Inc.* v. *Gates Rubber Co.*, 228 Cal.App.2d 810, 815-816 [39 Cal.Rptr. 767]).

■ This case presents a classic situation for the application of the implied covenant doctrine. The stated purpose of the parties' agreement of October 20, 1956, was to limit the ownership and control of the shares of the newly formed Bahl Corporation, in the event of stock sales, to original incorporators insofar as practicable. Thus the reference to the ''same terms'' in the preemption provision can, in good conscience, only mean that where an offer to purchase is made by a third party in terms of a unique interest or commodity, an offer of the cash equivalent by an original incorporator is acceptable. Any other interpretation would transcend the bounds of commercial reason and practice and would allow the agreement to be easily frustrated by any capricious offer from a third party.[2]

This interpretation is clearly indicated by the provision

---

[2]*Born* v. *Koop*, 200 Cal.App.2d 519 [19 Cal.Rptr. 379], and *Rylee* v. *De Fini*, 134 Cal.App.2d Supp. 877 [285 P.2d 115], cited by defendants, are not relevant as neither involved the frustration of a preexisting agreement.

specifying proportionate purchasing rights. The agreement states that "should more than one of the undersigned be desirous of purchasing said stocks or bonds, the buying rights of each undersigned shall be that portion of such offered stocks or bonds as will enable each of the undersigned to maintain the same proportionate ownership of said corporation as exists at the time of the signing of this agreement." Assuming the highly improbable, that two or more of the present stockholders might own a sufficient equity in a funeral home identical or equivalent to that offered by Johnson, there is even less likelihood that they would perchance share the ownership therein in the same proportion as their respective interests in the Bahl Corporation. Clearly, this provision contemplates the right to purchase for cash.

Our view here is supported by the somewhat analogous case of *Beets* v. *Tyler* (1956) 365 Mo. 895 [290 S.W.2d 76]. In that case, as part of the plan of a real estate development, a restrictive covenant was included in every conveyance requiring anyone proposing to sell a lot to give adjoining lot owners notice of the proposed sale and the right to buy the lot on "such terms," a provision precisely analogous to the preemption provision in the agreement here in question. The defendant Tyler, the owner of several lots, gave notice to her neighbors that she had agreed to sell her lots to a couple named Long for $9,000 and an exclusive nonassignable "right to visit such property during the next ten years and to occupy a bedroom alone during her visits to such property" and have the Longs treat her cordially and furnish her meals during such visits.

When the neighbors sought specific performance of their preemptive right to buy on "such terms," the defendant argued that her neighbors could not possibly perform the contract on "such terms" since the contract provided that she was to be entertained in the home of the Longs and that entertainment by the plaintiffs would not be the same. The court rejected this contention and granted specific performance, stating at pages 81 and 82 [290 S.W.2d]: "We will dispose of this contention by simply saying that defendant knew that plaintiffs would have the right to purchase, and hence substitute for the Longs in furnishing these services, and, therefore, she must have entered into the contract with the idea that she would be willing to accept performance from them."

We hold that the express purpose of the October 20

agreement was to perpetuate the ownership of the Bahl Corporation within the membership of its original shareholders, if possible, and that in order to carry out this purpose, it is necessary and legally proper to imply a covenant permitting the signatories to purchase stock for the cash equivalent of any unique property offered by a third party.

Defendants' contention that plaintiffs' alleged acceptance on March 8 was untimely is discounted. The agreement gave plaintiffs 30 days to match any outside offer and the allegations of the complaint indicate that defendants informed plaintiffs of the precise terms of the Johnson offer on March 6.

We agree with defendants that the omission of the specific language of plaintiffs' acceptance of March 8 and the attempted pleading of the contract in general terms in the third amended complaint does not have the legal effect of withdrawing the plaintiffs' acceptance in its complete form from the consideration of the court in construing the amended pleading, as it was set forth verbatim in a prior pleading (*Stockwell* v. *Lindeman,* 229 Cal.App.2d 750, 754 [40 Cal. Rptr. 555]). However, in view of our holding that the agreement permits plaintiffs to purchase by cash equivalent, the exact language of their March 8 letter of acceptance does not render the third amended complaint fatally defective. Thus *Lee* v. *Hensley,* 103 Cal.App.2d 697 [230 P.2d 159], and other authorities cited by defendants, are inapplicable.

The third amended complaint herein stated facts sufficient to support the two causes of action alleged and it was improper to sustain the general demurrer without leave to amend.

The judgment is reversed.

Shoemaker, P. J., and Agee, J., concurred.

A petition for a rehearing was denied January 19, 1966, and respondents' petition for a hearing by the Supreme Court was denied February 16, 1966.