[Civ. No. 62353. Second Dist., Div. Five. Sept. 20, 1982.]

MORELAND DEVELOPMENT COMPANY, Plaintiff and Appellant, v.
GLADSTONE HOLMES, INC., Defendant and Respondent.

**COUNSEL**

Stroock & Stroock & Lavan, William H. Levit, Henry J. Silberberg, Joel M. Kozberg, George C. Bond, Robert W. Putnam, Daniel F. Sanchez, Jonathan W. Biddle and Emily R. Boyle for Plaintiff and Appellant.

Russell W. Bledsoe for Defendant and Respondent.

Rhodes, Kendall & Harrington, Paul H. Parilla and Clay M. Smith as Amici Curiae on behalf of Defendant and Respondent.

## OPINION

AISENSON, J.*—After several months of negotiations on March 6, 1979, respondent/seller executed a writing entitled, "Superseding Agreement to Buy and Sell Real Property and Escrow Instructions" regarding 75 acres of industrial land located in the City of Pomona at a purchase price of $2.9 million. The document was signed as "SELLER" by the president and secretary of respondent company and the corporate seal was affixed thereto.

On March 9, 1979, appellant's president and assistant secretary signed as "BUYER" and its corporate seal was affixed thereto. Appellant is a wholly owned subsidiary of Union Oil Company.

Among the pertinent provisions contained in the document under the designation "4. CONDITIONS PRECEDENT" Buyer's obligation to purchase and close of escrow are conditioned on the following:

(b) Buyer to obtain a satisfactory tract map. "All of the features of said maps and conditions imposed by the approving authority shall be satisfactory to BUYER in BUYER's sole discretion. . . . "

(3) (Should be (e).) Buyer obtaining at its own expense, satisfactory engineering, soil and geology reports for the property. "If BUYER does not decide to proceed, in return for SELLER providing BUYER the right to investigate the property for 60 days and approve the condition of the property prior to proceeding with the purchase, BUYER shall, in the event of cancellation of this Agreement without a close of escrow and transfer of title to BUYER, assign to SELLER (without warranty of accuracy, reliability or thoroughness thereof)" and deliver all said documents to seller at no cost to seller and "BUYER hereby agrees to indemnify and hold SELLER harmless against any damage or claims arising from BUYER's activities during said investigation."

(f) A preliminary title report acceptable to "BUYER . . . . "

"(i) *Executive Approval* [The main point of contention among the provisions of the document] BUYER's obligations to purchase and close of escrow are conditioned upon the approval of the transaction de-

---

*Assigned by the Chairperson of the Judicial Council.

scribed in this Agreement by the Board of Directors of BUYER within 90 days of BUYER's execution hereof...."

Two prior tentative agreements regarding subject property at lower prices were drawn up on forms provided by appellant. The language herein with some minor exceptions is a copy of that form albeit drawn up by respondent. Each side attributes authorship to the other and urges this court to interpret the language "most strongly against the party who caused the uncertainty to exist." (Civ. Code, § 1654.)

On March 9, 1979, appellant sent the completed document together with a letter of transmittal by certified mail to respondent informing them "[w]e have opened an escrow at First American Title Company in Santa Ana this date." The letter was arguably mailed by 4:45 p.m. At 5 p.m. respondent had hand delivered to appellant's office a letter stating, "This letter hereby revokes the offer from Gladstone Homes [sic] Inc. to Moreland Development Company ...."

March 9th having been a Friday, neither party actually opened and/or read their mail until the following Monday, March 12th.

On March 8, 1979, respondent entered into a second agreement with Lighthouse Equities, Inc. (appearing amicus herein) to purchase and sell the same property for $3.75 million.

On March 10, 1980, in denying respondent's first motion for summary judgment on the pleadings, the court found:

(1) That there was a triable issue of fact as to whether acceptance of the agreement was posted before the revocation was effectuated.

(2) That a trier of fact could find that the obligation of "Plaintiff-Buyer to turn over to Seller all plans, studies, engineering, soils or geology reports, maps and other documents that the Seller would have accepted sufficient consideration for an option." Further, that this same consideration was intended by the parties to apply to provision 4(i) regarding executive approval. "Mutuality is merely one of consideration and a trial court should not give a literal construction to a provision such as this but should construe it reasonably in light of the complexity of a transaction which mandates considerable expenditures to determine economic feasibility."

On March 26, 1980, respondent filed a second notice of motion for summary judgment. After a recitation that the court had read and considered the moving and responsive papers, all supporting documentation and oral argument, the court found the respondent "has shown by judicial admissions, judicial notice properly taken, admissible evidence and reasonable inferences from admissible evidence [there was no indication what evidence was considered, notice taken or inferences drawn by the court] that the Complaint in this action has no merit against defendant Gladstone Holmes, Inc. and that plaintiff Moreland Development Company has presented no triable issue of fact on the Complaint against Gladstone Holmes, Inc." The court granted the motion for summary judgment. It is from this judgment that this appeal is taken.

A motion for summary judgment "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." For this purpose the court "shall consider all of the evidence set forth in the papers, *except that to which objections have been made and sustained by the court* [respondent interposed some objections, but they were not ruled on by the court] ... except summary judgment shall not be granted by the court based on inferences reasonably deducible from such evidence, if contradicted by other inferences or evidence, which raise a triable issue as to any material fact." (Code Civ. Proc., § 437c.)

 Respondent complains the condition 4(i), conditioning "BUYER's obligations to purchase and close escrow upon the approval of the transaction described in this Agreement by the Board of Directors of BUYER within 90 days of BUYER's execution hereof," renders the contract illusory.

In a case involving a condition subjecting the contract to board approval it was held, "[r]espondent's reliance on cases holding that when one of the parties to an agreement reserves an unqualified right to escape its obligations under the agreement, the promise is illusory and thus cannot constitute a binding contract, is also misplaced. As we have explained, the condition of board approval does not give respondent corporation the absolute right to escape its obligations under the agreement since there is an implied obligation on the part of the seller's officers to carry out the objectives of the contract *in good faith* by submitting the proposal to the board. Moreover, a part of the implied obligation would be that the board would actually confer and decide wheth-

er to approve the proposed sale." (Italics added.) (*Jacobs* v. *Freeman* (1980) 104 Cal.App.3d 177, 190 [163 Cal.Rptr. 680].)

"There are two other well-established rules which are pertinent. ■ First, '[i]n every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement. [Citations].' ■ . . . Second, if a contract is capable of two constructions, the court must choose that interpretation which will make the contract legally binding if it can be so construed without violating the intentions of the parties." (*Bleecher* v. *Conte* (1981) 29 Cal.3d 345, 350 [173 Cal.Rptr. 278, 626 P.2d 1051]; Civ. Code, §§ 1643 and 3541.)

"In the present case, the seller contends that the buyers' promise was illusory since they assumed no real obligations under the agreement. Therefore, she argues, the contract lacked mutuality of obligation and was unenforceable. She claims that the buyers could decline to have a tract map prepared . . . renege on the agreement . . . .

"There is one fatal flaw in the seller's argument that this contract lacked mutuality of obligation. She overlooks the buyers' promise . . . to 'proceed with diligence.'" (*Bleecher* v. *Conte, supra*, pp. 350-351.)

■ We hold that the court's first impression was the better one. In light of an inspection of the four corners of the instrument; the supporting documentation and reasonable inferences to be drawn therefrom; and the rules of construction and interpretation advanced in the judicial precedent enumerated, we cannot say, as a matter of law, a bilateral contract was not struck or that the sellers' revocation preceded buyer's acceptance. The record and documentation indicate facts and circumstances from which inferences could be drawn in support of or in opposition to these contentions, therefore, giving rise to substantial questions of triable fact.

The judgment is reversed.

Ashby, Acting P. J., and Hastings, J., concurred.

A petition for a rehearing was denied October 14, 1982, and respondent's petition for a hearing by the Supreme Court was denied November 17, 1982. Newman, J., and Kaus, J., did not participate therein.