[Civ. No. 66031. Second Dist., Div. Three. June 21, 1983.]

RICH VISION CENTERS, INC., et al., Plaintiffs and Appellants, v. BOARD OF MEDICAL EXAMINERS, Defendant and Respondent.

112

COUNSEL

Mark Kalisch and Richard A. Brody for Plaintiffs and Appellants.

John K. Van de Kamp, Attorney General, and David Chandler, Deputy Attorney General, for Defendant and Respondent.

OPINION

**KLEIN, P. J.**—Rich Vision Centers, Inc. (Rich) and Terminal-Hudson Electronics, Inc. (Terminal-Hudson) appeal from an adverse judgment in their suit against the Board of Medical Examiners[1] (Board) for the recovery of certain payments made pursuant to a negotiated settlement.

Because the Board, and therefore the attorneys representing it, had the power to settle the case upon reasonable conditions, we affirm the judgment.

### FACTS AND PROCEDURAL BACKGROUND

Rich and Terminal-Hudson were corporations doing business as dispensing opticians. In June 1975, they had a large number of contested matters pending with the Board. These matters included 19 administrative and at least 9 civil proceedings.

In a letter dated June 9, 1975, to the deputy attorney general representing the Board, the attorney for Rich and Terminal-Hudson made an offer to compromise all the lawsuits. After a number of conversations, the deputy attorney general indicated that as a condition of settlement, the Board would require the payment of its attorneys' fees. The figure $25,546.50 represented the Board's attorneys' fees, investigative costs and administrative hearing expenses.

At a Board meeting on August 23, 1975, Rich and Terminal-Hudson also agreed to pay $16,186.56 to cover costs for future inspection for compliance.

Pursuant to the negotiated settlement, the deputy attorney general drafted a "Stipulation and Decision" covering the administrative matters and other required documents necessary for the civil proceedings. As a consequence

[1]The Board was changed to the Division of Allied Health Professions of the Board of Medical Quality Assurance by Business and Professions Code section 2550.1.

of the settlement, the pending statements of issues were resolved by issuance of licenses, no licenses were revoked, and only two civil actions remained to be litigated. During the settlement negotiations, no allegation was raised by Rich and Terminal-Hudson that the money payment portion of the settlement was illegal.

About two years later in June 1977, Rich and Terminal-Hudson filed the two cases here involved seeking the recovery of the $25,546.50 paid for attorneys' fees and the $16,186.56 paid for future inspection costs provided for in the prior negotiated settlement. At this point in time, they alleged that in accepting the settlement, the Board did not have the authority to condition the licenses on such payments and that the payments were coerced.

In due course, evidence was presented by Rich and Terminal-Hudson before the trial court in the present action. At the close of plaintiffs' case, the Board moved for judgment under Code of Civil Procedure section 631.8, subdivision (a) on the grounds that the plaintiffs had failed to prove their case. The motion was granted by the trial court, with a finding that as a part of a negotiated settlement, the Board required, and Rich and Terminal-Hudson agreed to pay, the $25,546.50 as attorneys' fees, investigative costs and administrative hearing expenses, and the $16,186.56 as future inspection fees. The trial court further held that the settlement was legal and noncoerced. Judgment was entered and a notice of appeal was timely filed.

ISSUE AND CONTENTIONS

The issue here presented is whether the Board had the authority to engage in settlement negotiations of pending cases, the resolution of which called for payment of attorneys' fees and future investigation costs by litigants.

Rich and Terminal-Hudson contend that the Board had no such authority because such fees were actually "penalties" which were imposed without notice and hearing and they rely on Business and Professions Code section 108 to support their claim.[2] They reason that the settlement was an illegal and ultra vires act and that they were entitled to restitution of monies paid.

---

[2]Business and Professions Code section 108 sets forth generally the functions of boards, which include ". . . the imposing of penalties following . . . hearings, . . ."

DISCUSSION

We note at the outset that the scope of a licensing agency's power to settle cases has never been litigated in California. Therefore, this is a case of first impression.[3] We look to basic principles for guidance.

1. *The Board has implied power to settle licensing disputes.*

■ Administrative agencies only have the power conferred upon them by statute and an act in excess of these powers is void. (*City and County of San Francisco* v. *Padilla* (1972) 23 Cal.App.3d 388, 400 [100 Cal.Rptr. 223]; see also *Ferdig* v. *State Personnel Bd.* (1969) 71 Cal.2d 96, 103 [77 Cal.Rptr. 224, 453 P.2d 728]; *Selby* v. *Department of Motor Vehicles* (1980) 110 Cal.App.3d 470, 474-475 [168 Cal.Rptr. 36].) However, an agency's powers are not limited to those expressly granted in the legislation; rather, "[i]t is well settled in this state that [administrative] officials may exercise such additional powers as are necessary for the due and efficient administration of powers expressly granted by statute, or as *may fairly be implied* from the statute granting the powers." (*Dickey* v. *Raisin Proration Zone No. 1* (1944) 24 Cal.2d 796, 810 [151 P.2d 505, 157 A.L.R. 324]; see also *Stackler* v. *Department of Motor Vehicles* (1980) 105 Cal.App.3d 240, 245 [164 Cal.Rptr. 203].)

■ No statute expressly authorizes the Board even to settle licensing disputes, let alone spells out conditions governing settlement. We must therefore first decide whether the ability to negotiate settlement of disputes may be implied from the overall statutory scheme. In so doing, we look to the *purpose* of the agency for guidance. (See *Dickey* v. *Raisin Proration Zone No. 1, supra,* at p. 802.)

The main purpose of the Board, like other agencies within the Department of Consumer Affairs is to insure that persons engaged in the profession possess and use "the requisite skills and qualifications necessary to provide safe and effective services to the public, . . ." (Bus. & Prof. Code, § 101.6.) This broad purpose is effectuated mainly by the issuance, renewal or revocation of a license to practice. (See Bus. & Prof. Code, §§ 2553, 2555.)

---

[3]That this issue has not arisen before is not surprising. Once settled, a matter usually ends. Indeed, one of the benefits of settlement is that settlement finally concludes the matter. It is most unusual for a party to come into court several years after the agreement has been performed and the benefits therefrom have been received and ask to have certain terms rescinded.

Permitting the Board to settle disputes over present or continuing fitness for a license helps to achieve the Legislature's purpose. Settlement negotiations provide the Board greater flexibility. Importantly, settlements provide the means to condition the issuance or renewal of licenses in order best to protect the public. Licensing can be tailored to suit the particular situation. Because conditions are voluntarily accepted by the applicant, enforcement problems are unlikely.

Increased efficiency enures to the busy Board possessed of the authority to settle disputes.

When the Board initially determines that a license should be denied, revoked or suspended, the applicant becomes entitled to a full hearing in accordance with the Administrative Procedures Act. (Gov. Code, §§ 11501, 11503.) While not as formal as a trial, the hearing has many of the same trappings as a regular civil proceeding including a detailed accusation or statement of issues, notice, discovery and the adversary presentation of evidence. (See Gov. Code, §§ 11503-11516.) Obviously, for both the Board and litigants, the cost of such proceedings may be avoided by settlements and a time savings is also likely to be realized.

Because settlement is administratively efficient and furthers the purpose for which the Board was created, we hold that the Board has the implied power to settle licensing disputes. (Cf. *Hamilton* v. *Oakland School Dist.* (1933) 219 Cal. 322, 327 [26 P.2d 296] (ability to settle claims against district an implied power of school board).) This holding is consistent with the general policy of favoring compromises of contested rights. (See *id.*, at p. 329; *Fisher* v. *Superior Court* (1980) 103 Cal.App.3d 434, 441 [163 Cal.Rptr. 47].)

That at least part of a settlement must be incorporated into a formal Board decision to be effective does not change our determination that the Board has the ability to formulate the settlement in the first instance. In other areas of the law, parties may try privately to settle problems even though a court must adopt or ratify their agreement. (See e.g. *Robinson* v. *Robinson* (1949) 94 Cal.App.2d 802, 805 [211 P.2d 587] (marital property settlement incorporated in interlocutory decree of divorce); Fed. Rules Civ.Proc., rule 23(e), 28 U.S.C. (requiring court approval of class action settlement).)

2. *Settlement terms are limited only by public policy.*

██  Additionally, we see no limitations on the conditions that may be included in a settlement except that such conditions must not violate public

policy. A party need not have a legally enforceable right to a concession granted in a compromise agreement. (*Hall* v. *Coyle* (1952) 38 Cal.2d 543, 546 [241 P.2d 236]; *Stub* v. *Belmont* (1942) 20 Cal.2d 208, 217 [124 P.2d 826].) There is little danger that the agency will obtain concessions on extraneous matters, or will overreach the applicant. To be valid, all the terms of a settlement must be voluntarily agreed to by the parties. (See *Enslow* v. *von Guenthner* (1961) 193 Cal.App.2d 318, 321 [14 Cal.Rptr. 231].) An applicant who believes that a Board is asking for unreasonable concessions or is making unlawful demands always retains the *option* to refuse a proffered settlement and to proceed to hearing.

The ability to negotiate favorable settlement terms has long been among attorneys' most effective tools for promoting their clients' best interests. To successfully use this tool however, an attorney must have flexibility in formulating the terms and conditions of any agreement to maximize benefit to the client. Settlement negotiations involve give and take, and the final agreement is a compromise. Government attorneys no less than attorneys in the private sector are responsible for promoting their clients' best interests.[4] (See *People* ex rel. *Deukmejian* v. *Brown* (1981) 29 Cal.3d 150, 157 [172 Cal.Rptr. 478, 624 P.2d 1206].) There is no reason to handicap those members of the Attorney General staff who represent licensing agencies in performing their duty by limiting their ability to propose and include any settlement term beneficial to the public.

3. *Business and Professions Code section 108 does not preclude the negotiated settlement herein.*

Rich and Terminal-Hudson contend however that the particular terms of this settlement directly contravene Business and Professions Code section 108 and as such are illegal. Business and Professions Code section 108 sets forth the *functions* of boards within the Department of Consumer Affairs, including "issuing citations and holding hearings for the revocation of licenses, and the *imposing of penalties following such hearings.*" Rich and Terminal-Hudson argue that the attorneys' fees and the future investigation costs are "penalties" which were imposed without the required notice and hearing.

We agree that a court should not enforce a settlement which reaches a result clearly forbidden by law. (See *Estate of Gilliland* (1974) 44 Cal.

---

[4]We are aware that the Attorney General's staff has a duty to protect the public as well as serve its agency "client" and that the two duties may occasionally conflict. In such cases, it is proper for the Attorney General to cease representing the agency and have the agency retain private counsel. (*Ibid.*; *D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 14-15 [112 Cal.Rptr. 786, 520 P.2d 10].)

App.3d 32, 40 [118 Cal.Rptr. 447] ("deference to such settlements gives way, however, to adherence to basic trust law.").) We do not believe that Business and Professions Code section 108 was violated here. The fee provisions were part of a negotiated settlement agreement which the trial court specifically found was not coerced, and did not constitute "penalties" imposed by the Board. Had Rich and Terminal-Hudson not wished to pay these amounts by way of settlement, they retained the option of declining to participate in the stipulation and to proceed to hearing on the licensing dispute. The payments were not "imposed" by the Board; they were voluntarily assented to by Rich and Terminal-Hudson. Business and Professions Code section 108 was therefore not contravened.

### CONCLUSION

In conclusion, we discern no reason in logic, law or policy to deny to the Board as a state agency acting on behalf of the state citizenry, or to its attorneys, the same options to settle cases on any legitimate terms as are available to private litigants and their attorneys.

### DISPOSITION

The judgment is affirmed.

Lui, J., and Danielson, J., concurred.

A petition for a rehearing was denied July 20, 1983, and appellants' petition for a hearing by the Supreme Court was denied September 7, 1983.