[No. C016474. Third Dist. June 17, 1996.]

GERARD FRANKEL, Plaintiff and Appellant, v.
BOARD OF DENTAL EXAMINERS, Defendant and Respondent.

538

**COUNSEL**

James Jay Seltzer, William Mahannah and Timothy D. Murphy for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, and William L. Marcus, Deputy Attorney General, for Defendant and Respondent.

## OPINION

**SCOTLAND, J.**—Gerard Frankel, D.D.S., appeals from the judgment denying his petition for a writ of mandamus to require the Board of Dental Examiners to set aside a disciplinary order which is based upon his assent to the settlement of an accusation filed against him by its executive director, Georgetta Coleman, and to allow him to proceed with a contested hearing on the matter.[1]

The "Stipulation for Settlement" was executed by Frankel and his attorney, and by counsel for Coleman. In it, Frankel expressly gave up his right to a contested hearing on the accusation, admitted allegations that subjected his license to discipline, and agreed he would not engage in the practice of dentistry for 30 days and would subject himself to being placed on probation for 5 years under other conditions. In exchange, Coleman agreed to cancel the scheduled three-day hearing and forgo her authority to proceed on the accusation to obtain stronger findings and a harsher disciplinary order against Frankel. The settlement agreement specifies that, "[s]hould the Board of Dental Examiners, for any reason, fail or refuse to adopt this stipulation, it shall be of no force or effect as to either party."

Three months later, after he retained another attorney and after Coleman canceled the administrative hearing, Frankel sought to withdraw from the stipulation, but Coleman refused to accept the withdrawal. The Board then adopted the settlement as its decision and imposed the discipline specified in the stipulation.

According to Frankel, because the stipulated settlement states the agreement would have no effect if the Board failed to approve the settlement, he was entitled to withdraw his assent to the stipulation at any time prior to its adoption by the Board. We disagree.

As we shall explain, implied in the agreement is an obligation to submit the stipulation to the Board for consideration and to give the Board a reasonable period of time to act on it. (Cf. *Jacobs* v. *Freeman* (1980) 104 Cal.App.3d 177, 188-189 [163 Cal.Rptr. 680]; *Addiego* v. *Hill* (1965) 238 Cal.App.2d 842, 847 [48 Cal.Rptr. 240]; *Hastings* v. *Matlock* (1985) 171 Cal.App.3d 826, 838 [217 Cal.Rptr. 856].) The potential lack of approval by

---

[1]Hereafter, we shall refer to the Board of Dental Examiners by full name or as "the Board."

the Board, which would have relieved the parties of their obligations under the agreement but did not occur, is simply a "condition subsequent" which "is not a valid basis for concluding that the contract is not presently binding and effective." (*Hoover Community Hotel Development Corp.* v. *Thomson* (1985) 167 Cal.App.3d 1130, 1138 [213 Cal.Rptr. 750].) By impliedly agreeing to permit the Board to confer and decide whether to approve or reject the settlement, Frankel could not withdraw his assent to the stipulation before the Board had a reasonable opportunity to act on it. Accordingly, we shall affirm the judgment denying Frankel's petition for writ of mandamus.

## FACTS AND PROCEDURAL BACKGROUND

In July 1991, an administrative accusation (Bus. & Prof. Code, § 1670; Gov. Code, § 11503) was filed against Gerard Frankel, a dentist licensed by the Board of Dental Examiners since 1957. The complainant, Georgetta Coleman, the Board's executive director, alleged that Frankel had violated provisions of the Business and Professions Code and Health and Safety Code relating to maintaining and dispensing medications, including controlled substances, and keeping proper records of their acquisition, inventory and disposition. Coleman asked the Board to revoke or suspend Frankel's license or to take other action as the Board deemed proper.

After receiving the accusation, Frankel contacted Deputy Attorney General William Marcus, who serves as Coleman's counsel and had prepared the pleading. Dates were set for a hearing on the accusation, and the parties began settlement negotiations. In September 1991, a settlement conference was attended by Frankel and Marcus. A second settlement conference was held in January 1992, attended by Marcus, Frankel and his counsel, Randolph Wright.

During an exchange of correspondence between Wright and Marcus, spanning seven months, a written settlement was prepared, which the parties agreed and understood would be submitted at the close of negotiations to the Board for consideration and action. Frankel and Wright executed the "Stipulation for Settlement" in March 1992, and returned it to Marcus accompanied by a letter indicating Frankel's acceptance was conditioned upon Coleman agreeing to change certain terms of the signed stipulation.

On April 13, 1992, Marcus replied that, in light of Frankel's efforts to revise the written agreement, the parties apparently had no agreement and Marcus would proceed to a hearing on the accusation "unless [he] first receive[d] a simple letter, signed and dated by Mr. Wright and Dr. Frankel, which says that notwithstanding any other correspondence or writings, Dr.

Frankel accepts the stipulation <u>as written</u>, without condition or qualification." (Original underscoring.)

The next day, Frankel responded in writing with an unqualified acceptance of the agreement. The stipulation recites that Frankel (1) waives his rights to a hearing on the charges in the accusation, to present evidence and confront evidence presented against him, and to appeal any adverse decision against him; (2) admits, for purposes of settlement only, certain allegations of the accusation; (3) agrees "his license is subject to discipline" based on the admitted facts; and (4) stipulates the Board may revoke his license to practice dentistry, provided the revocation is stayed and his license is placed on probation for five years on certain conditions, including that he "shall be suspended from the practice of dentistry for a period of thirty (30) days, beginning the effective date of this decision." The stipulation further specifies that, "[s]hould the Board of Dental Examiners, for any reason, fail or refuse to adopt this stipulation, it shall be of no force or effect as to either party." Signatories to the stipulation are Frankel and his counsel, Wright, and Marcus as "Attorney[] for Complainant."

In exchange for Frankel's unqualified acceptance of the stipulation, Marcus released the dates scheduled for a hearing on the accusation—for which the Office of Administrative Hearings had set aside three days—and, as agreed, forwarded the stipulation to Coleman for action by the Board. Marcus gave Frankel a copy of Marcus's letter to Coleman, outlining the parties' positions, summarizing the evidence, and stating he "strongly recommend[s] the adoption of the stipulation" by the Board. The letter also informed Coleman that Frankel was requesting the Board to consider permitting him to deliver free dental services to indigent children in lieu of the 30-day suspension to which he had stipulated.

In June 1992, three months after Frankel executed the stipulation and one month after it was sent to Coleman for Board action, Marcus was contacted by James Seltzer, an attorney whom Frankel had retained to replace Wright. Seltzer's letter states Frankel "hereby withdraws" his agreement to the stipulation, but indicates Frankel "would like to resolve this matter by Stipulation, but with a modification of the terms and conditions."

Asserting "a stipulation once signed cannot be withdrawn absent some special circumstance, other than second thoughts on the part of the licensee," Marcus responded that he would advise Coleman not to accept Frankel's purported "withdrawal of the stipulation."

In September 1992, the Board adopted the stipulation as its formal order which, by the order's terms, would become effective on October 15, 1992.

Frankel petitioned the superior court for a writ of administrative mandamus directing the Board to set aside its disciplinary order based on the stipulation and allow him to proceed with a contested hearing on the matter. He argued the stipulation "had no force or effect until adopted by [the] Board" and, thus, it was an executory agreement he was free to revoke at any time before the Board approved the stipulation and made it an order of the Board.

The court denied the petition, finding the stipulation is governed by traditional rules of contract law, is supported by consideration, and is not illusory; its validity is not conditioned upon approval by the Board; and no grounds exist for setting aside the stipulation. This appeal ensued.

## DISCUSSION

The Board of Dental Examiners is organized under the auspices of the Department of Consumer Affairs for the purpose of assuring that the practices of dentistry and dental hygiene—"professions deemed to engage in activities which have potential impact upon the public health, safety, and welfare"—are "adequately regulated in order to protect the people of California." (Bus. & Prof. Code, §§ 100, 101, 101.6, 1601-1808.) The Board must determine that such professionals "possess the requisite skills and qualifications necessary to provide safe and effective services to the public," and must "ensure performance according to set and accepted professional standards." (Bus. & Prof. Code, § 101.6.)

"This broad purpose is effectuated mainly by the issuance, renewal or revocation of a license to practice." (*Rich Vision Centers, Inc.* v. *Board of Medical Examiners* (1983) 144 Cal.App.3d 110, 114 [192 Cal.Rptr. 455]; Bus. & Prof. Code, §§ 1611.5, 1626, 1628.5, 1646.7, 1646.9, 1670, 1680-1681.)

Among other responsibilities, the Board is charged with investigating allegations of unprofessional conduct, incompetence, fraudulent action, or unlawful activity brought to its attention by the public, and with instituting disciplinary action against licensees when such action is warranted. (Bus. & Prof. Code, § 101.6.)

A proceeding to determine whether a dentist's license should be "revoked, suspended, limited or conditioned shall be initiated by filing an accusation." (Gov. Code, § 11503.) The proceeding is civil in nature, intended to protect the public rather than punish the licensee. (*Lam* v. *Bureau of Security & Investigative Services* (1995) 34 Cal.App.4th 29, 38 [40 Cal.Rptr.2d 137].)

■ Although no statute expressly authorizes the settlement of a dispute that has given rise to a disciplinary accusation, the statutory scheme has been interpreted to give administrative agencies such as the Board "the implied power to settle licensing disputes" and to incorporate the settlement into a formal Board decision. (*Rich Vision Centers, Inc.* v. *Board of Medical Examiners, supra,* 144 Cal.App.3d at p. 115.) Provided they do not include conditions that violate public policy, settlements are administratively efficient, further the purpose for which the Board was created, and are consistent with the general policy of favoring compromises of contested rights. (*Ibid.*)

■ Absent a statutory framework governing enforcement of agreements to settle accusations brought by licensing agencies, the parties assert that their "Stipulation for Settlement," like civil settlement agreements generally, is governed by contract principles. (*Nicholson* v. *Barab* (1991) 233 Cal.App.3d 1671, 1681 [285 Cal.Rptr. 441]; *In re Frye* (1983) 150 Cal.App.3d 407, 409 [197 Cal.Rptr. 755].) We agree.[2]

■ The stipulation must be " 'interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful.'. . . The intention of the parties must be first determined from the language of the contract itself. . . . However, where the language of the contract is ambiguous, it is the duty of the court to resolve the ambiguity by taking into account all the facts, circumstances and conditions surrounding the execution of the contract. . . ." (*Floystrup* v. *City of Berkeley Rent Stabilization Bd.* (1990) 219 Cal.App.3d 1309, 1317-1318 [268 Cal.Rptr. 898], citations omitted.)

■ "That which is necessarily implied in the language of a contract is as much a part of it as that which is expressed." (*Wal-Noon Corp.* v. *Hill* (1975) 45 Cal.App.3d 605, 611 [119 Cal.Rptr. 646]; 11 Williston on Contracts (3d ed. 1968) § 1295, pp. 33-41.) "[A] contract includes not only the promises set forth in express words, but, in addition, all such implied provisions as are indispensable to effectuate the intention of the parties and as arise from the language of the contract and the circumstances under which

---

[2]We acknowledge that administrative proceedings to suspend or revoke a professional license are not perfectly analogous to civil proceedings generally. The former serve the public interest in removing incompetent or dishonest practitioners from the public sphere. (*Lam* v. *Bureau of Security & Investigative Services, supra,* 34 Cal.App.4th at p. 38.) Hence, in assisting the prosecution of a licensing disciplinary matter, the Attorney General's office "has a duty to protect the public as well as serve its agency 'client' and . . . the two duties may occasionally conflict." (*Rich Vision Centers, Inc.* v. *Board of Medical Examiners, supra,* 144 Cal.App.3d at p. 116, fn. 4.) In civil proceedings generally, only the litigants' private interests are at stake.

it was made . . . ." (*Sacramento Navigation Co.* v. *Salz* (1927) 273 U.S. 326, 329 [71 L.Ed. 663, 665, 47 S.Ct. 368].)

This rule is codified in California. Section 1656 of the Civil Code provides: "All things that in law or usage are considered as incidental to a contract, or as necessary to carry it into effect, are implied therefrom, unless some of them are expressly mentioned therein, when all other things of the same class are deemed to be excluded."

■ As noted in *Addiego* v. *Hill, supra,* 238 Cal.App.2d 842, "The modern trend of the law is to favor the enforcement of contracts and, if feasible, to carry out the intentions of the parties. Neither law nor equity requires that every term and condition be set forth in a contract. The usual and reasonable terms found in similar contracts may be considered, unexpressed provisions of the contract may be inferred from the writing, external facts may be relied upon, and custom and usage may be resorted to in an effort to supply a deficiency if it does not alter or vary the terms of the agreement . . . . The court should accord an interpretation which is reasonable (Civ. Code, § 1643) and which gives effect to the intent of the parties as it may be interpreted from their entire agreement rather than one which renders the contract void (Civ. Code, §§ 1650, 1652, 1655, 1656). [¶] . . . [C]ourts cannot make better agreements for parties than they themselves have been satisfied to enter into or rewrite contracts because they operate harshly or inequitably. It is not enough to say that without the proposed implied covenant, the contract would be improvident or unwise or would operate unjustly. Parties have the right to make such agreements. The law refuses to read into contracts anything by way of implication except upon grounds of obvious necessity. '[I]mplied covenants are not favored in the law; and courts will declare the same to exist only when there is a satisfactory basis in the express contract of the parties which makes it necessary to imply certain duties and obligations in order to effect the purposes of the parties to the contract made' [citation]." (*Addiego* v. *Hill, supra,* at pp. 846-847.)

■ Accordingly, "[t]he rules controlling the exercise of judicial authority to insert implied covenants require several concurrent conditions: (1) the implication must arise from the language used or it must be indispensable to effectuate the intention of the parties; (2) it must appear from the language used that it was so clearly within the contemplation of the parties that they deemed it unnecessary to express it; (3) implied covenants can only be justified on grounds of legal necessity; (4) a promise can be implied only where it may be rightfully assumed that it would have been made if attention had been called to it; and (5) there can be no implied covenant where the

subject is completely covered by the contract . . . ." (*Addiego* v. *Hill, supra,* 238 Cal.App.2d at p. 847; see also *Los Angeles City Employees Union* v. *City of El Monte* (1985) 177 Cal.App.3d 615, 623 [220 Cal.Rptr. 411] [finding existence of an applied term, because "all things incidental to a contract or necessary to its operation are implied through custom and usage"].)

■ The facts concerning the execution and language of the stipulation at issue in this case are not in dispute. Therefore, we review de novo the application of law to the undisputed facts. (*Fagerquist* v. *Western Sun Aviation, Inc.* (1987) 191 Cal.App.3d 709, 719 [236 Cal.Rptr. 633].)

■ Although the stipulation does not expressly say so, the implication that the parties agreed to submit the stipulation to the Board for consideration, and to give the Board a reasonable period of time to act on it, is fairly drawn from the language of the stipulation and the parties' exchange of correspondence concerning the stipulation.

The provision of the stipulation which states the agreement shall be rendered ineffective "[s]hould the Board of Dental Examiners, for any reason, fail or refuse to adopt [it]" presupposes that the Board will have the opportunity to consider the stipulation and decide whether to approve or reject it. The exchange of letters in which the terms of the stipulation were negotiated is replete with references to the parties' understanding that the stipulation shall be "submitted to the Board," that Marcus would send the executive director a memorandum outlining for the Board the reasons why it should adopt the stipulation, and that the Board ultimately would have the opportunity to consider and decide whether to do so.

That the Board would have the opportunity to consider and act on the stipulation is so central to both parties' evident understanding of the settlement process, we must conclude that its express articulation was deemed unnecessary and would have been included had the need for an express provision been drawn to the parties' attention. (Cf. *Jacobs* v. *Freeman, supra,* 104 Cal.App.3d at pp. 181-182, 189 [a land-sale contract with an express provision that the escrow is subject to approval by the seller's board of directors contains an implied agreement that the contract would be submitted to the board for approval and the board would act in good faith in considering the sale]; *Hastings* v. *Matlock, supra,* 171 Cal.App.3d at p. 838 [if an agreement is silent as to time for performance, the law will imply a reasonable time].)

In addition, the statutory framework within which the Board operates contemplates that the Board's consideration of, and action on, the stipulation

is both a legal necessity and "indispensable to effectuate" the parties' intended resolution of an accusation. (*Addiego* v. *Hill, supra*, 238 Cal.App.2d at p. 847; *Tonkin Construction Co.* v. *County of Humboldt* (1987) 188 Cal.App.3d 828, 832 [233 Cal.Rptr. 587].)

The Board's power and discretion to initiate, review and prosecute accusations have been delegated to its executive director. (Bus. & Prof. Code, § 1616.5; Cal. Code Regs., tit. 16, § 1001, subd. (b).)[3] Consequently, the Board is not a party to a proceeding commenced by the filing of an accusation. The accusation against Frankel makes this clear by naming the Board's executive director, Georgetta Coleman, as the complainant and by specifying that Coleman "makes and files this accusation solely in her official capacity as [executive director]."

Implicit in the executive director's power to initiate a disciplinary accusation is the authority to negotiate a settlement. (*Rich Vision Centers, Inc.* v. *Board of Medical Examiners, supra*, 144 Cal.App.3d at pp. 114-115.) Therefore, Coleman had the power to instruct her counsel, William Marcus, to seek a settlement acceptable to Coleman. That Coleman is the only other party to the stipulated settlement is evident in (1) Frankel's having engaged counsel for Coleman in settlement discussions, (2) the stipulation's provision for execution only by Frankel, his attorney, and counsel for the complainant Coleman, and (3) Frankel's insistence that he receive notice of communications between Coleman—the prosecutor of the accusation—and the Board, whose adjudicatory function would be discharged by its adoption or rejection of the stipulation.

Although it is not a party to the accusation, the Board retains its obligation to preside over contested proceedings, either directly or with the aid of an administrative law judge, to decide the merits of the accusation and, if necessary, to impose whatever discipline is deemed appropriate. (Gov. Code, §§ 11509-11512, 11515-11519; Bus. & Prof. Code, § 1670.) While the parties can stipulate that specified accusations are true and that certain discipline is appropriate, only the Board can decide the accusations and impose the discipline.

Because Board action in deciding the accusations and imposing the discipline is a legal necessity indispensable to effectuate the parties' intended

---

[3]Business and Professions Code section 1616.5 provides: "The board may appoint a person exempt from civil service who shall be designated as an executive officer and who shall exercise the powers and perform the duties delegated by the board . . . ."

California Code of Regulations, title 16, section 1001, subdivision (b) states: "The power and discretion conferred by law upon the board to initiate, review and prosecute accusations and statements of issues pursuant to Sections 11500 through 11528 of the Government Code are hereby delegated to and conferred upon the board's executive officer or in the absence thereof, the assistant executive officer."

resolution of an accusation, an implied term of the agreement to resolve the accusation by settlement is an understanding that the Board shall be permitted to act upon the stipulation. (Cf. *Addiego* v. *Hill, supra,* 238 Cal.App.2d at p. 847; *Tonkin Construction Co.* v. *County of Humboldt, supra,* 188 Cal.App.3d at p. 832.)

Since the stipulation and surrounding correspondence are silent as to the time by which the Board must act upon the stipulation after receiving it, the parties necessarily intended the Board to have a reasonable time to do so. (*Hastings* v. *Matlock, supra,* 171 Cal.App.3d at p. 838.) Frankel makes no claim that the Board did not act in a timely manner.

Accordingly, having expressly accepted the stipulation "without condition or qualification," impliedly agreeing to submit the stipulation to the Board for consideration and to give the Board a reasonable period of time to act on it, Frankel could not thereafter, at his pleasure, withdraw his assent to the stipulation before the Board had a reasonable opportunity to act on it.

Frankel disputes our conclusion. In challenging the effectiveness of the stipulation, he advances various contract principles.

Among other things, Frankel contends the stipulation is not binding upon him because it is not supported by consideration. In advancing this contention, Frankel mistakenly relies on cases which hold that, when a party to an agreement reserves an unqualified right to perform or withdraw at whim, the promise is illusory and cannot constitute a binding contract. As we have explained, *ante,* the Board is not a party to the stipulation; thus, the provision relating to the Board's subsequent action on the agreement does not render a *party* free to perform or to withdraw from the stipulation at its unrestricted pleasure. (Cf. *Mattei* v. *Hopper* (1958) 51 Cal.2d 119, 122 [330 P.2d 625].) The contract is not illusory because it contains an implied obligation that the Board's action will be exercised in good faith. (Cf. *Moreland Development Co.* v. *Gladstone Holmes, Inc.* (1982) 135 Cal.App.3d 973, 977-978 [186 Cal.Rptr. 6]; *Jacobs* v. *Freeman, supra,* 104 Cal.App.3d at pp. 188-190.)

There is ample evidence that the parties' stipulation is supported by consideration. Frankel expressly agreed not to contest allegations against him, admitted that these allegations warranted discipline, and agreed he would not engage in the practice of dentistry for 30 days and would subject himself to being placed on probation under other conditions. He also impliedly agreed to submit the stipulation to the Board for its consideration and action. In exchange, Coleman canceled a scheduled three-day hearing, forwent her authority to proceed on the accusation to obtain stronger findings

and a harsher disciplinary order against Frankel, and impliedly agreed to submit the stipulation to the Board for action. Compromise of the disputed claim and "the taking of the hearing off calendar" were sufficient consideration to form a binding contract. (*Huston* v. *Workers' Comp. Appeals Bd.* (1979) 95 Cal.App.3d 856, 865, fn. 12 [157 Cal.Rptr. 355].)

■ Because the Board is not a party to the accusation or stipulation, we reject Frankel's assertion that the agreement was an executory contract which he was free to revoke at any time before it was approved by the Board. It is true that, when "two parties execute a contract with the understanding that the approval of a third party is necessary for the agreement to take effect, the contract is not complete until the third party has approved. Until that happens neither party is bound by the agreement." (*Santa Clara-San Benito etc. Elec. Contractors' Assn.* v. *Local Union No. 332* (1974) 40 Cal.App.3d 431, 436 [114 Cal.Rptr. 909].) This is true, however, "only where it can be said that reasonable persons would have understood that the agreement would *not* be effective when originally signed . . . ." (*Jacobs* v. *Freeman*, *supra*, 104 Cal.App.3d at p. 189, original italics.)[4]

What Frankel seeks to avoid is his implied agreement to give the Board an opportunity to exercise its discretion to approve or reject the stipulation. Reasonable people would have understood that the parties' implied agreement to submit the stipulation for consideration by the Board was effective when the stipulation was signed.

■ Frankel next argues that the stipulation's clause which states, "Should the Board of Dental Examiners, for any reason, fail or refuse to adopt this stipulation, it shall be of no force or effect as to either party," prevented a contract from arising until it was formally adopted by the Board. To the contrary, the provision indicates the parties intended the stipulation to be effective *except* in the event the Board should "fail or refuse to adopt" it.

"The mere fact that . . . the actions agreed to be performed under a contract are not due until a later date and there is a present anticipation of a

---

[4]In each of the cases upon which Frankel relies, the evidence was clear that the parties intended the contract to be effective only when the necessary approval was obtained. (*Santa Clara-San Benito etc. Elec. Contractors' Assn.* v. *Local Union No. 332*, *supra*, 40 Cal.App.3d at pp. 434, 436 [a union constitution, of which both parties were aware, provided that "any agreement entered into by a local union shall be 'null and void' until approved by the international union"]; *Helperin* v. *Guzzardi* (1951) 108 Cal.App.2d 125, 127 [238 P.2d 141] [". . . it was understood between Guzzardi and Prindle that the agreement would not constitute a binding contract or be made use of unless and until it was signed by Mrs. Guzzardi"]; *Roth* v. *Garcia Marquez* (9th Cir. 1991) 942 F.2d 617, 619 [purported letter agreement between movie producer's representative and Garcia Marquez's literary agent stated " '[t]he option shall commence upon signature by Gabriel Garcia Marquez to the formal agreement and the return of said signed agreement' "].)

possible future repudiation . . . is not a valid basis for concluding that the contract is not presently binding and effective." (*Hoover Community Hotel Development Corp.* v. *Thomson, supra,* 167 Cal.App.3d at p. 1138; cf. *Chicago Bridge etc. Co.* v. *Ind. Acc. Com.* (1964) 226 Cal.App.2d 309, 316-317 [38 Cal.Rptr. 57] [the existence of a condition that a security clearance had to be obtained before employment would commence did not prevent the formation of a contract with respect to such employment at the time the employment agreement was made].)

The potential lack of approval by the Board is simply a condition subsequent, i.e., a future event upon the happening of which Frankel's agreements and obligations no longer would be binding on him. (Civ. Code, § 1438; 5 Williston on Contracts (3d ed. 1961) § 667, pp. 144-148; 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 738, p. 668.)

Frankel asks us to construe Board approval of the stipulation instead as a "condition precedent to the effection and execution of the Stipulation" and thus conclude that his withdrawal prior to satisfaction of this condition was timely. We decline to do so.

 Conditions precedent are not favored in the law (*In re Marriage of Hasso* (1991) 229 Cal.App.3d 1174, 1181 [280 Cal.Rptr. 919]; *Helzel* v. *Superior Court* (1981) 123 Cal.App.3d 652, 663 [176 Cal.Rptr. 740]), and courts shall not construe a term of the contract so as to establish a condition precedent absent plain and unambiguous contract language to that effect. (*Rubin* v. *Fuchs* (1969) 1 Cal.3d 50, 53 [81 Cal.Rptr. 373, 459 P.2d 925].)

 The language of the stipulation does not plainly and unambiguously establish Board approval as a condition precedent, and no other evidence suggests that the parties contemplated the agreement would not be effective when signed. To the contrary, the stipulation and all correspondence exchanged in the course of settlement negotiations indicate the parties intended that, as soon as Frankel and counsel for the executive director executed the stipulation, it would result in a binding agreement to submit the matter to the Board and give the Board a reasonable time to act on it.

 In a final attack on the effectiveness of the settlement agreement, Frankel compares it to a negotiated plea in a criminal prosecution, which plea may be withdrawn prior to court approval. For reasons which follow, the analogy is unpersuasive.

Unlike a criminal action, an administrative proceeding to revoke or suspend a professional license is not punitive in nature. (*Lam* v. *Bureau of Security & Investigative Services, supra,* 34 Cal.App.4th at p. 38.) " 'The

purpose of such a proceeding is not to punish but to afford protection to the public upon the rationale that respect and confidence of the public is merited by eliminating from the ranks of practitioners those who are dishonest, immoral, disreputable, or incompetent.' " (*Ibid.,* quoting *Borror* v. *Department of Investment* (1971) 15 Cal.App.3d 531, 540 [92 Cal.Rptr. 525].)

Moreover, there is no fundamental right to a professional license akin to the liberty interest which is given rigorous statutory and constitutional protection in criminal law. (*Kenneally* v. *Medical Board* (1994) 27 Cal.App.4th 489, 497 [32 Cal.Rptr.2d 504]; *Stroh* v. *Midway Restaurant Systems, Inc.* (1986) 180 Cal.App.3d 1040, 1052 [226 Cal.Rptr. 153]; *Murrill* v. *State Board of Accountancy* (1950) 97 Cal.App.2d 709, 711-712 [218 P.2d 569]; *Gregory* v. *Hecke* (1925) 73 Cal.App. 268, 283 [238 P. 787].)

■ Penal Code section 1018 states that, unless otherwise provided by law, every plea shall be entered "by the defendant himself or herself in open court."[5] Penal Code sections 1192.4 and 1192.5 state that plea agreements which provide the defendant cannot be punished for a higher degree of crime or attempted crime than the degree specified in the plea agreement, or which specify the punishment to be imposed, must be approved by the court. Therefore, judicial approval is a condition precedent to any plea negotiated by the prosecution and the defendant, and ". . . a plea bargain is ineffective unless and until it is approved by the court." (*In re Alvernaz* (1992) 2 Cal.4th 924, 941 [8 Cal.Rptr.2d 713, 830 P.2d 747]; *People* v. *Orin* (1975) 13 Cal.3d 937, 942-943 [120 Cal.Rptr. 65, 533 P.2d 193].)

Because, by statute, a negotiated plea in a criminal proceeding is an executory contract (*In re Alvernaz, supra,* 2 Cal.4th at p. 943), the parties are not justified in relying on the plea agreement until it is approved by the court. (Cf. *United States* v. *Ocanas* (5th Cir. 1980) 628 F.2d 353, 358.) Hence, at any time before the court approves the negotiated plea, the defendant is free to withdraw his promise to so plead. (*In re Alvernaz, supra,* at p. 941; cf. *U.S.* v. *Savage* (9th Cir. 1992) 978 F.2d 1136, 1137; *U.S.* v. *Papaleo* (1st Cir. 1988) 853 F.2d 16, 19.) However, when the court conditionally approves the plea pending receipt of a probation report (Pen. Code, § 1192.5), the defendant is bound by the plea agreement even though the court later may disapprove it; if the court withdraws its approval, only then is the defendant entitled to withdraw his plea agreement. (*Ibid.; People* v. *Johnson* (1974) 10 Cal.3d 868, 872 [112 Cal.Rptr. 556, 519 P.2d 604].)

■ There are no such statutes governing the settlement of administrative accusations. Nothing in the statutory scheme (Gov. Code, §§ 11500-11530) requires Board approval before a settlement agreement is effective as

---

[5]In the case of a misdemeanor, Penal Code section 1429 authorizes the plea to be entered by the defendant or counsel.

to the parties, or in any other way operates to make the settlement of an administrative accusation an executory contract which can be rescinded before approval by the Board.

Significant policy considerations may explain the absence of statutory provisions which would allow a licensee to withdraw his or her assent to the settlement of an accusation up until the time it is approved by the Board. In civil matters generally, there is a strong policy favoring settlement of litigation. (*In re Marriage of Assemi* (1994) 7 Cal.4th 896, 910 [30 Cal.Rptr.2d 265, 872 P.2d 1190]; *Villa* v. *Cole* (1992) 4 Cal.App.4th 1327, 1338 [6 Cal.Rptr.2d 644]; *Fisher* v. *Superior Court* (1980) 103 Cal.App.3d 434, 436, 441 [163 Cal.Rptr. 47]; Code Civ. Proc., § 664.6.) The finality of settlement agreements is particularly important in administrative accusations because, as the Attorney General points out, allowing a licensee to withdraw from a settlement at any time before Board approval may threaten public health and safety by delaying substantially the adjudication of disciplinary accusations and permitting a licensee who has conceded wrongdoing to continue unrestricted practice in the interim.

Unlike the trial court, which convenes five days each week and generally is available to receive negotiated pleas in criminal cases on a daily basis, the Board meets only periodically. (Bus. & Prof. Code, § 1607 [requires the Board to meet twice a year and permits it to meet "at such other times and places" as the Board designates for the purpose of transacting its business].) According to evidence in this case, the Board meets no more than five times a year. Consequently, as happened in this case, months may pass between the time a settlement agreement has been signed by the parties and the Board has an opportunity to consider it.

This delay would be compounded if a licensee is permitted to renege on a settlement on the eve of its consideration by the Board; the executive director then would have to revive and reschedule the disciplinary proceeding—a process which could take months depending on the time required to gather and reorganize evidence and to calendar hearing dates compatible with the schedules of witnesses and counsel.

With public health and safety at stake, considerations of public policy dictate against a system which would permit a licensee to abuse the process by first agreeing to, and months later withdrawing from, a stipulated settlement in order to delay the adjudication of the administrative action and allow the licensee to continue practice in the interim.

Moreover, permitting a licensee unilaterally to rescind a settlement agreement before the Board acts on it will have an adverse effect on the executive

director's ability to pursue other disciplinary actions intended to protect public health and safety. In this era of limited resources, the time and funds spent rescheduling and prosecuting a disciplinary accusation where the parties' settlement has not been rejected by the Board necessarily will reduce the resources available to prosecute accusations against other licensees for failures to conform to acceptable standards and will delay the imposition of discipline upon those licensees, thereby exposing the public to danger.

For all the reasons stated above, we conclude the stipulated settlement in this case was effective when executed by the parties, and Frankel could not withdraw his assent to the stipulation before the Board had a reasonable opportunity to act on it.

## Disposition

The judgment is affirmed.

Blease, Acting P. J., and Sims, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 25, 1996.