11 Cal.Rptr. 718]

[Civ. No. 9964.   Third Dist.   Mar. 10, 1961.]

RALPH W. FROST, Respondent, v. STATE PERSONNEL
BOARD et al., Appellants.

Stanley Mosk, Attorney General, and Willard A. Shank, Deputy Attorney General, for Appellants.

Donald A. Peters and James H. Phillips for Respondent.

VAN DYKE, P. J.—This is an appeal from a judgment of the Superior Court of Sacramento County directing the issuance of a peremptory writ requiring respondent State Personnel Board to set aside an order dismissing the appeal of petitioner Ralph W. Frost in a proceeding wherein he sought relief from board action denying him a salary increase and reclassifying him to a lower grade as a state employee with civil service status. The writ of mandate as ordered out required that the board hold further hearings in the proceeding before it and proceed to a decision upon the merits.

There are presented to us the following questions: 1. In a proceeding before a hearing officer without the presence of the agency board, may the hearing officer entertain a motion to dismiss an action against the agency at the close of the actor's evidence? 2. If, in the instant case, improper procedure has been adopted, was the procedural error of sufficient materiality to warrant setting aside the order of dismissal?

The Administrative Procedure Act, now appearing as Government Code, sections 11500 et seq., was adopted by the Legislature after comprehensive studies by various agencies concerning the need for and the requirements of an administrative code. The subject matter was treated extensively in the Tenth Biennial Report of the Judicial Council, Part Two. The council reported that a fairly detailed examination of statute law indicated there were more than 100 agencies which might properly come within the authorization to the council; that the adjudicating power of state agencies varied greatly, and that it was considered desirable to offer only a careful and detailed proposal with respect to a portion of the field of administrative adjudication without attempting to cover the entire field with a general, less precise statute. The council proposed that the Legislature pass an act creating a department of administrative procedure and appended to its report a proposed act which in substance was later adopted. With respect to hearings before the agencies, the council stated in its report that the proposed legislation dealing with hearings had two fundamental purposes: first, the assurance that all hearings would provide due process of law and be conducted in an orderly manner; second, that there should be achieved a separation of the prosecuting and adjudicating functions within the agencies. The first purpose, it was asserted, would be served by the provision that all hearings must be conducted by qualified hearing officers with a proviso that the agency might either delegate the duty of conducting a hearing to a hearing officer who would sit alone, or the agency might itself elect to sit at a hearing with the hearing officer presiding. Said the council, at page 20:

"When the hearing officer sits with the agency it is provided that he preside at the hearing, rule on the admissibility of evidence and act as legal adviser. . . . When the hearing officer sits alone he is in effect a deputy of the agency and is authorized to exercise all of the agency's powers in conducting the hearing."

It is apparent from the legislation enacted that in the main the proposals of the Judicial Council were accepted. The position of the hearing officer is somewhat unique. He presides at all hearings, either alone or in the presence of the agency board. He rules upon the admissibility of evidence and advises the board as to all matters of law involved in a board decision, but he has no power to decide the issues presented in the hearing. Power to adjudicate has not been given to

him. The question of who should make the decision received serious consideration. Said the report of the council, page 23, title Decision:

". . . Who should make the decision was one of the most difficult problems presented. The first conclusion reached by the Council, which was expressed in its tentative report, was that an initial decision should be made in all cases by the person or body which heard the evidence. This was an adaptation of the rule of the Morgan cases in the United States Supreme Court which are customarily, though not precisely, summarized by the phrase that 'he who decides must hear.' . . . The tentative proposals of the Council, therefore, provided that the initial decision should be made by the agency if the agency members heard the case and by a hearing officer if he sat alone. The initial decision of the hearing officer was, of course, subject to the control of the agency through its power to reconsider the case. . . .

"The tentative Council proposal met with considerable objection, upon the ground that the full power of decision should remain with the agency in each case. The principal reason given was that the Legislature has entrusted the ultimate authority to the agency itself and that the responsibility for the decision should be retained by those responsible for the policies of the agency. This argument carries a great deal of weight. It is particularly persuasive in view of the fact that the Council's tentative proposal involved a procedure uncommon in California. A number of State agencies now use deputies to hear cases and such deputies normally have only the power to recommend a decision to the ultimate deciding authority.

". . . [T]he Council's proposal, which allows the agency itself to retain direct control over the adjudicating function, will nevertheless permit expeditious handling of routine cases where the agency finds no fault with the hearing officer's proposed decision. If the agency itself hears the case, it decides it. If a hearing officer alone hears the case he prepares a proposed decision in the form required for the final decision."

The recommendation of the council as to where the adjudicative power should rest is reflected in section 11517 of the Government Code, which we quote:

"(a) If a contested case is heard before an agency itself the hearing officer who presided at the hearing shall be present during the consideration of the case and, if requested, shall assist and advise the agency. Where a contested case is heard

before an agency itself, no member thereof who did not hear the evidence shall vote on the decision.

"(b) If a contested case is heard by a hearing officer alone, he shall prepare a proposed decision in such form that it may be adopted as the decision in the case. A copy of the proposed decision shall be filed by the agency as a public record. . . . The agency itself may adopt the proposed decision in its entirety, or may reduce the proposed penalty and adopt the balance of the proposed decision."

■ Demurrers to evidence and motions for nonsuit are familiar in court proceedings. In the main they are intended to save time where, through failure to present a prima facie case, a plaintiff may suffer dismissal of his action without his adversary being put to the useless task of rebuttal where no case has been made. But in such a situation the court must accept as true all testimony in plaintiff's favor and must draw all permissible inferences in his favor. The judge never weighs the evidence in passing on such a motion. Preponderance of the evidence is not, at that point, an issue. As a practical matter, judges often, though doubting that a prima facie case has been made out, nevertheless deny the motion for dismissal and proceed to the further trial of the cause. The ruling on such a motion in a court trial can be and usually is made promptly without any extensive delay or continuance of the trial. The situation is quite different in administrative procedure where the officer sits alone, as is generally the case, and as was done in the cause before us. The hearing officer cannot rule on the motion. The board is not present. He must therefore of necessity recess the hearing, report the matter to the board, which must in turn be convened for the purpose of passing on the motion. The motion will be presented to a board wholly unfamiliar with the case before it and the board, generally untrained in matters of law, will often be presented with a difficult and time-consuming decision. The granting of the motion involves a final decision of the cause. Section 11517 of the Government Code provides:

"(c) . . . The agency itself shall decide no case provided for in this subdivision without affording the parties the opportunity to present either oral or written argument before the agency itself."

This provision alone could materially extend the time consumed in the decision of a cause if the legislation be construed as permitting demurrers to evidence or motions in the nature of motions for nonsuit. There is nothing in the legislation

which specifically provides for the entertainment of such motions and there is nothing therein which prescribes the way in which such a motion shall be presented to the board. Would the hearing officer be required to recommend a ruling supporting his recommendation by a statement of the evidence that had been taken? Is he required to have the evidence transcribed as taken and submit it to the board with his recommendation? If he presumes to condense the evidence into a narrative statement, must he submit the proposed statement to opposing counsel so that they may object to its accuracy if they deem it inaccurate? In view of the underlying purpose of the code for administrative procedure which is the expeditious and fair handling of adversary cases before the agencies, in view of the lack of legal training on the part of boards generally, in view of the difficulty of convening boards for the special and limited purpose of passing on such motions, in view of the lack of any prescribed procedure by which such motions are to be reported by the hearing officer to the board, and in view of the probability that the entertainment of such motions would serve no time-saving purpose, but on the contrary would probably lead to a wasteful expenditure of time, it is our opinion that such motions may not be entertained and passed on to the agency boards, at least in proceedings where a hearing officer alone is taking the evidence.

The record in this case is a good example of the difficulty which will be presented if hearing officers sitting alone are required to entertain such motions and to report them to the agency boards for ruling, particularly in the absence of any specification of procedure on such motions in the governing statutes. When the motion was made in this case, the hearing officer pointed out the lack of any specific authorization for him to entertain such a motion and the lack of any prescribed procedure. He suggested to counsel that he make a report to the board with a proposed decision by him upon the motion, thus substantially conforming to the prescribed procedure when a final decision, after full hearing, was to be made. The hearing officer in his report purported to give a narrative statement of the testimony. There was no submission of the proposed narrative statement to counsel, although it must be said such action had not been requested and therefore may be considered to have been waived, if required. The contentions of appellant were stated by the hearing officer and discussed by him, and then the hearing officer continued as follows:

"The weight of the evidence produced by appellant fails to sustain the contention set forth in paragraph VII (a), above.

"The performance by Merle Murphy of the supervisory or foreman's duties described in paragraph V while he is classified as an automobile Body worker constitutes a failure to comply strictly with the provisions of Section 19255 of the Government Code of the State of California. However, this does not in any way inure to the benefit of appellant, since the weight of the evidence produced by appellant fails to show that, but for the reorganization and the transfer of part of his functions described above, the salary for his present position would be higher than it now is.

"Appellant has failed to establish by the weight of the evidence that he has a legal right to that portion of the duties and responsibilities formerly assigned to his position which was represented by his supervision over the Sacramento automotive shop of the Department of California Highway Patrol.

"Respondent's motion to dismiss appellant's appeal made at the conclusion of appellant's case ought to be granted."

It is certainly clear that in respect to the proper test to be applied to the evidence that had been received, the hearing officer did not discuss the evidence from the standpoint of prima facie proof, and did not advise the board that it should be so considered. On the contrary, he purports to weigh the evidence, to state his conclusions concerning the preponderance thereof, and to recommend that the board base its ruling on the preponderance of the evidence.

In view of the hearing officer's status as legal adviser to the board, and in view of the fact that usually boards are not trained in matters of law, it cannot be said that, faced with such a proposed decision, a board would ordinarily consider whether or not a prima facie case had been made out under the appropriate rule. Ordinarily a board would accept the recommendation and take the advice of the hearing officer as to what the ruling on the motion should be. In short, it is altogether unlikely in this case that the persons having authority to rule on the motion did in any real sense rule on it at all.

We have said that we think motions based upon want of evidence to make a prima facie case are not an authorized part of administrative procedure. However, we are confronted here with a decision, the error committed being a procedural error, and we must therefore proceed to deter-

mine whether or not that error has been in anywise prejudicial to respondent. If it be true that as a matter of law the evidence of respondent did not entitle him to any relief, even when taken as wholly true and when given the benefit of every inference that may be drawn in his favor, then we ought not to set aside the order of dismissal and remand for further proceedings. Respondent makes no complaint of not having had full opportunity to prove all that he could and, in fact, he consented to the procedure followed.

Frost had for long been an employee of the state with permanent civil service status, working in the classification of Shop and Stores Supervisor, California Highway Patrol. He was responsible for receiving, outfitting and issuing motor vehicles to the patrol field officers, and typical tasks in his classification were the planning, assigning and supervising of a group of employees engaged in varied storekeeping, motor vehicle outfitting and related supply and service work. Under his supervision there was a storekeeping unit employing seven people and an automobile shop unit employing another seven. So far as here material the employees in the shop unit were classified as automobile body workers. Their typical tasks were the straightening and repairing of bent or broken fenders, the building up of dents in bodies or fenders, the welding of thin sheet metal as required in repair processes, the straightening of damaged automobile bodies and the straightening and aligning of automobile frames.

In the course of time two things happened to Frost which he deemed adverse to his interests and which he claimed had been unlawfully contrived by his superiors. He was denied a salary raise which he claimed he was entitled to and which had been given to about 90 per cent of state employees and he was downgraded to the classification of Storekeeper II. The salary raise which he claimed to have been entitled to was in the nature of an increased cost of living allowance made by the Legislature and administered by the appellant board. After Frost had been denied a salary raise and had been downgraded he complained to the board that these things had been wrongfully done and his complaint was treated as an appeal by the board which then ordered a hearing before a hearing officer. Frost contended that his adversities were the result of an unlawful plan whereby his superiors had assigned his supervisorial duties over the shop unit to one Merle Murphy, an automobile body worker employed in that unit, who could not lawfully perform those duties because to do so he would be

compelled to work out of his classification in violation of civil service laws and rules. Having thus, as Frost contended, unlawfully deprived him of a material part of his duties, his superiors had contrived denial to him of the salary raise and had brought about his downgrading to Storekeeper II, a lower classification with a lower salary range. Frost's evidence, stated favorably to him, showed the following: Beginning in 1955, by action of his superiors, Frost's supervisorial duties over the shop unit were gradually taken from him and delegated to Murphy. More and more as time went by Frost was bypassed and Murphy was substituted until finally a situation was arrived at wherein Frost's duties were limited completely to supervision of the store unit. While Frost still maintained his classification, which made him responsible for supervision over the shop unit, and although, as he testified, he was ready at all times to perform those duties, the work was in fact taken from him by the action of his superiors and given to Murphy so that when a general pay increase of 5 per cent was given by the board to about 90 per cent of all state employees the board refused to give a raise to Frost upon the ground, as Frost contended, that he was not entitled to the same because he was in fact performing only the duties of a storekeeper second class. It was true factually that at the time the board denied the raise the duties Frost was actually performing were only those of a storekeeper second class, and it is a fair inference from the testimony that the board was influenced by the factual situation in denying the raise. Frost's superiors had no right to bypass him and give his supervisorial duties to Murphy and Murphy had no right to perform them because to do so he was working out of his classification. Proper procedure, if change were in order, would have been to create the job of shop supervisor for the patrol. But if this had been done, Murphy, to take the job, would have had to qualify by competitive examination. The evidence shows that has never been done and that when in the process of reorganizing the patrol Frost was classified as Storekeeper II without any duties of supervising the shop unit, that work was given to one of Frost's superiors and to the one who had been mainly instrumental in creating the situation, which, as Frost contends, caused his reclassification. We conclude that, applying the proper rule for the determination of the motion for dismissal, Frost made out a prima facie case. The conduct of Frost's superiors cut squarely across both the purpose and the meaning of the rules and regulations governing civil service.

They had no right, however convenient it may have been, to go contrary to civil service rules and regulations in assigning the supervisory work over the shop unit. Presumably they knew they were violating those rules and regulations and as the hearing officer aptly remarked it is difficult to ascribe proper motive to wrongdoing. By this wrongdoing, and presumably with intent, Frost's superiors contrived by the unlawful use of Murphy as supervisor over the shop unit, a situation which may well have been the motivating factor for denying Frost a raise in pay and for his reclassification. ▆▆▆ A civil service employee must, by his superiors, be given full opportunity to perform his allotted work. If they could do what was here done they could create a false appearance of nonperformance of duties, of lack of work in his classification, and of need of reclassification. If unchecked, such conduct would do serious damage to the whole system of civil service.

▆▆▆▆ Frost having made a prima facie showing in support of his contentions, the procedural error in entertaining and granting a motion for dismissal at the close of Frost's evidence was prejudicial and the order of the trial court in mandate directing the board to set aside its ruling granting the dismissal and to proceed further with the hearing of the cause must be and it is hereby affirmed.

Schottky, J., and Warne, J. pro tem.,* concurred.

A petition for a rehearing was denied April 4, 1961, and appellants' petition for a hearing by the Supreme Court was denied May 3, 1961.

---

*Assigned by Chairman of Judicial Council.