[No. C040142. Third Dist. Dec. 18, 2002.]

DUARTE & WITTING, INC., Plaintiff and Appellant, v.
NEW MOTOR VEHICLE BOARD, Defendant and Respondent;
DAIMLERCHRYSLER MOTORS CORPORATION, Real Party in Interest
and Respondent.

**COUNSEL**

Law Offices of Michael M. Sieving, Michael M. Sieving and Michael E. Dingwell for Plaintiff and Appellant.

Bill Lockyer, Attorney General, Jacob Appelsmith, Vincent J. Scally, Jr., and Marybelle D. Archibald, Deputy Attorneys General, for Defendant and Respondent.

Caulfield, Davies & Donahue, Robert E. Davies; Wheeler Trigg & Kennedy, Gwen J. Young; and Wendy S. Mirkin-Fox for Real Party in Interest and Respondent.

## OPINION

**SIMS, Acting P. J.**—Duarte & Witting, Inc., doing business as Nader Chrysler-Plymouth (Nader), appeals from the trial court's denial of its petition for a writ of administrative mandamus seeking to compel New Motor Vehicle Board (the Board) to hold an evidentiary hearing on the merits of a termination of Nader's Plymouth franchise by real party in interest DaimlerChrysler Motors Corporation (DaimlerChrysler), pursuant to Vehicle Code section 3050 et seq. (Undesignated statutory references are to the Vehicle Code.) The reason for the termination of the Plymouth franchise was DaimlerChrysler's discontinuation of the Plymouth line. The Board granted DaimlerChrysler's motion to dismiss Nader's protest to the termination, on the ground that the Board could not require DaimlerChrysler to continue producing Plymouths and lacked authority to grant any remedy where termination was due to discontinuation of the product rather than dissatisfaction with the dealer's performance. Nader contends the Board does not have statutory authority to grant a dismissal motion and must conduct an evidentiary hearing on statutorily enumerated "good cause" factors for termination, e.g., whether Nader performed its obligations under the franchise agreement. We shall conclude the Board has implied authority to dismiss a protest where, as in this case, the undisputed facts show good cause for termination of a franchise. We shall therefore affirm the trial court's judgment denying the petition for writ of administrative mandamus.

### FACTUAL AND PROCEDURAL BACKGROUND

At all relevant times, DaimlerChrysler was a manufacturer of several line-makes of new motor vehicles, including Chrysler, Plymouth, Dodge, and Jeep. Nader was a new motor vehicle dealer in Martinez that had franchise agreements with DaimlerChrysler, authorizing Nader to sell and service Chrysler and Plymouth vehicles.

DaimlerChrysler issued a news release in November 1999 announcing the intent to phase out the Plymouth brand at the end of the 2001 model year and to strengthen the Chrysler brand, while continuing to meet its warranty obligations on existing Plymouths.

On September 19, 2000, DaimlerChrysler sent written notice to "All Plymouth Dealers," including Nader, giving notice that DaimlerChrysler

"will discontinue the Plymouth line make at the end of the 2001 model year," and its Plymouth franchise agreements would terminate effective September 30, 2001 (over a year after the date of the notice). Daimler-Chrysler also sent notice to all its Plymouth dealers in California advising the dealers they could protest to the Board under California law, though DaimlerChrysler further stated it "does not acknowledge that this provision applies to the discontinuation of the Plymouth line make and is not waiving any of its rights."[1]

We note there has been no attempt by DaimlerChrysler to terminate Nader's *Chrysler* franchise; only Nader's *Plymouth* franchise is at issue. Moreover, Nader does not dispute DaimlerChrysler's commitment to continue to meet its service obligations on existing Plymouths.

Nader filed a protest with the Board pursuant to sections 3060 and 3061 (which prohibit involuntary termination of a dealership without good cause), asking the Board to order DaimlerChrysler not to terminate Nader's Plymouth franchise or replace it with an equally valuable franchise.

DaimlerChrysler filed a motion to dismiss the protest, asserting its contract with Nader allowed for termination upon discontinuation of the Plymouth line, the Board had no jurisdiction over a franchise termination caused by a manufacturer's discontinuation of an entire line-make of vehicle, or alternatively, such discontinuation constituted "good cause" for franchise termination as a matter of law.

Nader filed an opposition to the dismissal motion, arguing it was entitled to a hearing on the merits of whether there was "good cause" for termination of the franchise. Nader argued among other things that it incurred substantial cost to acquire the dealership in March 1998 and remodel it, and would not have done so had DaimlerChrysler communicated its "impending decision" to discontinue the Plymouth line. Nader also argued DaimlerChrysler was not really exiting the market but was repackaging its Plymouth vehicles under other brand names, to the disadvantage of dealers such as Nader that would be left with single-brand dealerships, and therefore Nader should be given a franchise for such other brands. Nader complained DaimlerChrysler issued a letter of intention to award a Jeep franchise to Nader to replace the loss of the Plymouth line, but when existing Jeep dealers in the same market area protested (as authorized by statute), DaimlerChrysler withdrew the offer

---

[1]Nader's appellate brief states in a footnote that the notice of termination did not comply with statutory requirements, but Nader admits the issue was not raised in the underlying proceeding, and Nader does not present it as a basis for reversal of the judgment.

rather than fight the protests on Nader's behalf (resulting in withdrawal of the competitors' protests). Nader argued that without a second brand, it would suffer an unfair competitive disadvantage in comparison to its multi-brand competitors. Nader asked the Board to order DaimlerChrysler to issue a Jeep franchise.

Following a hearing before an administrative law judge (ALJ), the ALJ in May 2001 prepared a "Proposed Ruling On Motion To Dismiss," in which the ALJ proposed dismissing Nader's protest for lack of jurisdiction, because the statutory scheme requiring good cause for termination was not intended to apply to terminations due to discontinuation of the product line, and the Board had no power to grant any relief to Nader.

After consideration of the ALJ's proposal, the Board rejected the proposed ruling and instead issued its own "Ruling On Motion To Dismiss," concluding the Board did have subject matter jurisdiction over the dispute but lacked authority to grant any remedy where the termination was due to discontinuation of the product line, and therefore the protest was dismissed. The Board could not order DaimlerChrysler to keep making Plymouths. The Board could not, in this termination proceeding, order DaimlerChrysler to give Nader a Jeep franchise, because that would implicate rights of third parties who were not parties to this proceeding, i.e., existing Jeep dealers in the area. To the extent Nader alleged DaimlerChrysler allowed Nader to spend money remodeling the dealership despite DaimlerChrysler's knowledge it would soon discontinue the Plymouth line, the Board had no authority to award damages, even assuming such allegations could be considered in a termination proceeding. The Board noted some of these allegations may give Nader grounds for relief in a civil lawsuit filed in court.

The Board's ruling also stated, "There is no contention by [Nader] that the Plymouth line-make will not cease to exist." The Board acknowledged Nader's argument that it should get a Dodge or Jeep franchise because some Plymouth vehicles may be renamed Dodge or Jeep, but the Board said this proceeding could not be used to circumvent the rights of existing dealers to protest new franchises, nor was this proceeding the proper vehicle to seek such relief.

The Board concluded, "even though the Board has subject matter jurisdiction over the protest, it has no authority to grant any remedy requested in the protest which would provide relief to [Nader], since it has no power to order the manufacturer to remain in business or to continue manufacturing any

particular line-make, nor can it order the issuance of a new franchise in violation of the rights of third-parties, nor does it have the power to award damages."

The Board accordingly dismissed Nader's protest, but "without prejudice because it is possible for [Nader] to file a protest containing a request for relief within the Board's jurisdiction."

In June 2001, Nader filed in the trial court a petition for writ of administrative mandamus, asserting the Board's ruling was invalid because (1) the Board acted in excess of its jurisdiction by granting a motion to dismiss without specific statutory authority to grant a motion to dismiss; (2) the Board abused its discretion by failing to proceed in a manner required by law, in that it denied Nader a hearing on the merits of its protest; (3) the Board abused its discretion in that the ruling is unsupported by the findings, specifically, the Board found it had subject matter jurisdiction yet dismissed the protest; and (4) the Board abused its discretion by making inconsistent findings that it could not grant any relief, while dismissing the protest "without prejudice" because it was possible for Nader to file a protest requesting relief within the Board's jurisdiction. Nader asked the trial court to order the Board to hold an evidentiary hearing on the merits of Nader's protest.

Following a hearing, the trial court in November 2001 issued a judgment denying Nader's petition for writ of administrative mandamus.

## DISCUSSION

### I. *Standard of Review*

█ Because an automobile franchise is not a fundamental vested right, a trial court reviews a decision of the Board using the substantial evidence test. (*Automotive Management Group, Inc. v. New Motor Vehicle Bd.* (1993) 20 Cal.App.4th 1002, 1009-1010 [24 Cal.Rptr.2d 904].) However, when the trial court bases its decision on undisputed facts, as in the instant case, the conclusion is a question of law, which the appellate court reviews de novo. (*Foster v. Snyder* (1999) 76 Cal.App.4th 264, 267 [90 Cal.Rptr.2d 207]; *Bunnett v. Regents of University of California* (1995) 35 Cal.App.4th 843, 849 [41 Cal.Rptr.2d 567].)

## II. *The Statutory Scheme*

Section 3060 provides in part:

"(a) Notwithstanding Section 20999.1[2] of the Business and Professions Code or the terms of any franchise, no franchisor shall terminate or refuse to continue any existing franchise unless all of the following conditions are met:

"(1) The franchisee and the board have received written notice from the franchisor as [specified.] [¶] . . . [¶]

"(2) Except as provided in Section 3050.7 [stipulated decisions], the board finds that there is good cause for termination or refusal to continue, following a hearing called pursuant to Section 3066. The franchisee may file a protest with the board within [specified time periods]. When a protest is filed, the board shall advise the franchisor that a timely protest has been filed, that a hearing is required pursuant to Section 3066, and that the franchisor may not terminate or refuse to continue until the board makes its findings."

Section 3066 provides in part that "[t]he board, or a hearing officer designated by the board, shall hear and consider the oral and documented evidence introduced by the parties and other interested individuals and groups, and the board shall make its decision solely on the record so made. . . .

". . . In any hearing on a protest filed pursuant to Section 3060 or 3062, the franchisor shall have the burden of proof to establish that there is good cause to . . . terminate, or refuse to continue a franchise."

---

[2]Business and Professions Code section 20999.1 provides in part: "Notwithstanding the terms of any franchise [for the sale or distribution of fuel], no franchisor shall terminate, cancel, or fail to or refuse to renew any existing franchise without good cause.

"As used in this section good cause is limited to the following:

"(a) The gasoline dealer or petroleum distributor failed to comply with essential and reasonable requirements of the franchise agreement;

"(b) The gasoline dealer or petroleum distributor failed to act in good faith in carrying out the terms of the franchise; or

"(c) The franchisor is withdrawing from the marketing location at which the franchise of a gasoline dealer is located, provided that the franchisor pays the gasoline dealer the current wholesale market value for all qualifying equipment and supplies purchased by the gasoline dealer from the franchisor or affiliate of the franchisor. . . .

"(d) For other legitimate business reasons . . . ."

"Good cause" for termination is addressed in section 3061,[3] which lists various factors to be considered but expressly states the listed factors are not exclusive, and "the board shall take into consideration the existing circumstances."

Where the matter is heard by a hearing officer, the hearing officer submits a proposed decision to the board. (§ 3067, subd. (b).) The board issues a written decision containing "findings of fact and a determination of the issues presented. The decision shall sustain, conditionally sustain, overrule, or conditionally overrule the protest." (§ 3067, subd. (a).)

"Either party may seek judicial review of final decisions of the board." (§ 3068.)

Additionally, notwithstanding the Board's power to hear and decide protests, "the courts have jurisdiction over all common law and statutory claims originally cognizable in the courts. For those claims, a party may initiate an action directly in any court of competent jurisdiction." (§ 3050, subd. (e).)

III. *Implied Authority to Dismiss Protest*

As noted by Nader, the Board did not have *express* statutory authority to dismiss the protest. Section 3050 authorizes the Board to "[h]ear and decide" a protest. We note section 3067, subdivision (a), states the Board's decision "shall sustain, conditionally sustain, overrule, or conditionally overrule the protest." Section 3067 does not mention dismissal.

Nader contends that, since the Board does not have express statutory authority to grant a motion to dismiss a protest, its grant of the dismissal

---

[3]Section 3061 provides: "In determining whether good cause has been established for . . . terminating, or refusing to continue a franchise, the board shall take into consideration the existing circumstances, including, but not limited to, all of the following:

"(a) Amount of business transacted by the franchisee, as compared to the business available to the franchisee.

"(b) Investment necessarily made and obligations incurred by the franchisee to perform its part of the franchise.

"(c) Permanency of the investment.

"(d) Whether it is injurious or beneficial to the public welfare for the franchise to be modified or replaced or the business of the franchisee disrupted.

"(e) Whether the franchisee has adequate motor vehicle sales and service facilities, equipment, vehicle parts, and qualified service personnel to reasonably provide for the needs of the consumers for the motor vehicles handled by the franchisee and has been and is rendering adequate services to the public.

"(f) Whether the franchisee fails to fulfill the warranty obligations of the franchisor to be performed by the franchisee.

"(g) Extent of franchisee's failure to comply with the terms of the franchise."

motion was an act done in excess of jurisdiction. Nader cites case law purportedly holding that, once an administrative action is filed, an administrative agency can grant summary disposition only if authorized by statute or if the statutes demonstrate a clear intent that summary disposition is authorized. However, Nader fails to show how the cited cases support its position. *Stewart v. County of San Mateo* (1966) 246 Cal.App.2d 273 [54 Cal.Rptr. 599], said a county ordinance which expressly provided for a hearing *after* the sheriff revoked a private patrol operator's license, could not be construed as allowing a hearing *before* the sheriff acted. (*Id.* at p. 284.) The ordinance thus allowed a "summary suspension" subject to later review. (*Id.* at p. 286.) The other case cited by Nader, *Hough v. McCarthy* (1960) 54 Cal.2d 273 [5 Cal.Rptr. 668, 353 P.2d 276], found no due process problem with a statutorily authorized "summary procedure" whereby the Department of Motor Vehicles could suspend or revoke a driver's license without a hearing, upon the driver's conviction of drunk driving. Nader fails to explain how either of these cases stands for the proposition that an administrative agency can grant summary disposition only if authorized by statute. (*Id.* at p. 284.)

We shall conclude the Board did not act in excess of jurisdiction, because it had implied authority to dismiss the protest.

The Board is a quasi-judicial administrative agency of limited jurisdiction. (*Hardin Oldsmobile v. New Motor Vehicle Bd.* (1997) 52 Cal.App.4th 585, 590-591 [60 Cal.Rptr.2d 583] [Board did not have jurisdiction over car dealer's claim that manufacturer accepted bribes in exchange for favors concerning vehicle allocation and new dealership awards].)

"Administrative agencies only have the power conferred upon them by statute and an act in excess of these powers is void. [Citations.] However, an agency's powers are not limited to those expressly granted in the legislation; rather, '[i]t is well settled in this state that [administrative] officials may exercise such additional powers as are necessary for the due and efficient administration of powers expressly granted by statute, or as *may fairly be implied* from the statute granting the powers.' [Citations.]" (*Rich Vision Centers, Inc. v. Board of Medical Examiners* (1983) 144 Cal.App.3d 110, 114 [192 Cal.Rptr. 455] (*Rich Vision Centers, Inc.*), cited with approval in *Calfarm Ins. Co. v. Deukmejian* (1989) 48 Cal.3d 805, 824-825 [258 Cal.Rptr. 161, 771 P.2d 1247] [Insurance Commissioner had implied power to grant interim relief from plainly invalid rates].)

*Rich Vision Centers, Inc., supra,* 144 Cal.App.3d 110, said no statute expressly authorized the Board of Medical Examiners to settle licensing

disputes with medical professionals, and the court therefore had to decide whether the ability to negotiate settlement of disputes may be implied from the overall statutory scheme, in light of the purpose of the agency. (*Id.* at p. 114.) The appellate court concluded that "[b]ecause settlement is administratively efficient" and furthered the purpose for which the Board was created, the Board had the implied power to settle licensing disputes. (*Id.* at p. 115.)

Similarly, in *Frankel v. Board of Dental Examiners* (1996) 46 Cal.App.4th 534 [54 Cal.Rptr.2d 128], we rejected a dentist's attempt to set aside a disciplinary order which was based upon his assent to settlement of an accusation filed against him by the executive director of the Board of Dental Examiners. (*Id.* at p. 540.) We observed: "Although no statute expressly authorizes the settlement of a dispute that has given rise to a disciplinary accusation, the statutory scheme has been interpreted to give administrative agencies such as the Board 'the implied power to settle licensing disputes' and to incorporate the settlement into a formal Board decision. [Citation.] Provided they do not include conditions that violate public policy, settlements are administratively efficient, further the purpose for which the Board was created, and are consistent with the general policy of favoring compromises of contested rights. [Citation.]" (*Id.* at p. 544, citing *Rich Vision Centers, Inc., supra,* 144 Cal.App.3d 110.)

A dismissal by the Board was upheld in *Automotive Management Group, Inc. v. New Motor Vehicle Bd., supra,* 20 Cal.App.4th 1002. There, the manufacturer moved to dismiss a dealer's protest as untimely, and the dealer retorted the manufacturer should be estopped from invoking the time requirements. The ALJ held an evidentiary hearing on the dismissal motion. On appeal, the dealer argued the dismissal procedure was improper because there was no provision in the Administrative Procedure Act for a motion to dismiss. (*Id.* at pp. 1011, 1012.) The appellate court rejected the dealer's argument, stating:

" 'A proceeding before an administrative officer or board is adequate if the basic requirements of *notice* and *opportunity for hearing* are met.' [Citation.] 'The sufficiency of the notice and hearing is determined by considering the purpose of the procedure, its effect on the rights asserted, and other circumstances.' [Citation.] Although [the dealer] argues that the Board should have accepted the petition for filing, and then adjudicated the merits of the timeliness issue, we believe that permitting the ALJ to hear the issue as a 'motion to dismiss' was fair. A hearing was held. [The dealer] was permitted to introduce evidence. Four witnesses testified. Twenty-two exhibits were

introduced. Thus, it seems quite clear that [the dealer] was afforded an opportunity to be heard consistent with the requirements of due process.

"In addition, a motion to dismiss was utilized in *British Motor Car Distributors, Ltd. v. New Motor Vehicle Bd.* [(1987)] 194 Cal.App.3d 81 [239 Cal.Rptr. 280]. In that case, Maserati terminated the British Motors franchise. Over one year later, British Motors protested the termination. Maserati then filed a motion to dismiss the protest on the grounds that it was untimely. The motion was denied by the board. [Citation.] Although *British Motor Car Distributors, Ltd., supra,* did not analyze the propriety of the motion to dismiss procedure, it is noteworthy that the procedure *was* employed in that case, and that its propriety was never questioned by the appellate court or the parties." (*Automotive Management Group, Inc. v. New Motor Vehicle Bd., supra,* 20 Cal.App.4th 1002, 1012.)

Although the foregoing cases involved different kinds of dismissal that are not at issue in this case, we shall conclude the purpose of the Board and the goal of administrative efficiency support a conclusion that the Board has implied authority to dismiss a protest where the undisputed facts demonstrate good cause for franchise termination as a matter of law and afford no basis for preventing termination of the franchise. The procedure in this case was analogous to a summary judgment motion,[4] where the franchisor established good cause for termination as a matter of law, and the undisputed facts gave Nader no viable basis to prevent termination of the franchise. In this circumstance, there would be no point to conducting an evidentiary hearing on issues of whether the dealer was performing its obligations under the franchise agreement. Such an evidentiary hearing would simply entail the wasteful expenditure of public funds.

The purpose of the Board is reflected in an uncodified provision of a 1973 legislative amendment to the statute creating the Board (§ 3000), which stated: "The Legislature finds and declares that the distribution and sale of

---

[4]The Board likens the procedure to a demurrer because the Board assumed the truth of Nader's allegations. However, this assumption by the Board is consistent with summary judgment, where the existence of *non*material disputes will not defeat summary judgment. The Board says that no good-cause hearing was required in these circumstances. We believe it is more appropriate to view the dismissal motion as a summary proceeding in which good cause was established as a matter of law.

In its reply brief, Nader points to documents submitted to the trial court in a request for judicial notice, reflecting a legislative bill which would have implemented summary adjudication procedures for the Board "died" in committee. Nader develops no argument on this point, and it is without consequence to our construction of the existing statutory scheme.

new motor vehicles in the State of California vitally affects the general economy of the state and the public welfare and that in order to promote the public welfare and in the exercise of its police power, it is necessary to regulate and to license vehicle dealers, manufacturers, manufacturer branches, distributors, distributor branches, and representatives of vehicle manufacturers and distributors doing business in California in order to avoid undue control of the independent new motor vehicle dealer by the vehicle manufacturer or distributor and to insure that dealers fulfill their obligations under their franchises and provide adequate and sufficient service to consumers generally." (Stats. 1973, ch. 996, § 1, p. 1964.)

Dismissal of a protest in the circumstances of this case furthers the goal of administrative efficiency and is consistent with the Board's purpose. Thus, where it is undisputed that a franchisor is discontinuing manufacture of the product and the franchise agreement allows for termination upon such discontinuation, good cause for termination of the franchise exists as a matter of law. The Board has no power to conclude otherwise, nor does the Board have the power to award damages or grant the other relief sought by Nader, such as award of a new Jeep franchise to compensate for termination of the Plymouth franchise. (*Hardin Oldsmobile v. New Motor Vehicle Bd., supra*, 52 Cal.App.4th 585, 595 [Board lacks statutory authority to award damages].) Although the Board may impose conditions on termination of a franchise, "[a]ny conditions imposed by the board shall be for the purpose of assuring performance of binding contractual agreements between franchisees and franchisors or otherwise serving the purposes of this article." (§ 3067, subd. (a).) Nader does not demonstrate how this statute could apply to its case. In a footnote, Nader suggests the Board could have found a binding contractual agreement for DaimlerChrysler to award a new Jeep franchise to Nader, and could have "structur[ed] the condition in such a way that the establishment is conditioned upon unsuccessful protests of the competing dealers." However, it appears Nader is suggesting the Board could place a condition on the relief (the award of a new Jeep franchise), whereas the statute only allows the Board to place a condition on termination of the existing franchise (and therefore assumes the Board has the power to prevent termination of the existing franchise in the event the condition is not met). Nader also suggests in the same footnote that the Board could have conditioned termination upon DaimlerChrysler's continuing to provide warranty service for existing Plymouth customers. However, Nader did not seek such a condition in the administrative proceedings, nor has Nader disputed DaimlerChrysler's stated intent to continue performing its warranty obligations.

If Nader has claims for damages or other relief, it may pursue those claims in court under section 3050, subdivision (e),[5] but it cannot administratively halt the termination of the franchise.

Nader suggests implied authority to dismiss is inconsistent with the Board's regulations, in that California Code of Regulations, title 13, section 598, provides: "(a) A document which purports to be a protest pursuant to . . . section 3060 or 3062 which is received at the offices of the Board shall not be filed until the Secretary has reviewed it for compliance with the Board's enabling statutes and Title 13, Subchapter 2 of the California Code of Regulations. If the Secretary deems the document to comply, said document shall be filed. The Secretary may reject any document that does not comply with the Board's enabling statutes and Title 13, Subchapter 2 of the California Code of Regulations. . . ." Nader argues that since his protest was filed and assigned a protest number, the Board was required to give him an evidentiary hearing on the factors listed in section 3066. We disagree. The cited regulation speaks only to the filing of a protest and not to its dismissal once filed.

We also disagree with DaimlerChrysler's view that this regulation supports the Board's action, because California Code of Regulations, title 13, section 598, subdivision (c), says, "The Secretary may, for good cause shown, accept for filing any papers that do not comply with the Board's enabling statutes and Title 13, Subchapter 2 of the California Code of Regulations. Good cause issues and challenges to the Secretary's compliance determinations *may be resolved by law and motion proceedings* before a hearing officer." (Italics added.) This provision is similarly limited to acceptance of protests for filing; it does not address disposition of protests after they have been filed.

Though not cited by the parties, we note that in *Frost v. State Personnel Board* (1961) 190 Cal.App.2d 1 [11 Cal.Rptr. 718] (*Frost*), we held that in a contested case before an administrative agency, motions in the nature of demurrers to evidence or motions for nonsuit, based on want of evidence to make a prima facie case, may not be entertained and passed on to agency boards, at least in proceedings where a hearing officer alone takes the evidence. In *Frost*, a state highway patrol employee complained of board action denying him a salary raise and downgrading his position. (*Id.* at p. 8.)

---

[5]As indicated, section 3050, subdivision (e), provides that "[n]otwithstanding [the Board's power to hear and decide protests], the courts have jurisdiction over all common law and statutory claims originally cognizable in the courts. For those claims, a party may initiate an action directly in any court of competent jurisdiction."

After the employee presented his case to an ALJ, the ALJ submitted to the board a proposed decision to grant a defense dismissal motion on the ground that the employee failed to establish a right to relief by the weight of the evidence. (*Id.* at pp. 6-7.) The trial court issued a writ of mandamus requiring the board to hold further hearings and decide the case on the merits. (*Id.* at p. 2.) We affirmed, concluding the employee had made a prima facie showing in support of his claim, and therefore the procedural error in entertaining and granting the dismissal motion at the close of the employee's evidence was prejudicial. (*Id.* at p. 10.) With respect to the procedural error in entertaining and granting a dismissal motion in the nature of a nonsuit, we said, "In view of the underlying purpose of the code for administrative procedure which is the expeditious and fair handling of adversary cases before the agencies, in view of the lack of legal training on the part of boards generally, in view of the difficulty of convening boards for the special and limited purpose of passing on such motions, in view of the lack of any prescribed procedure by which such motions are to be reported by the hearing officer to the board, and in view of the probability that the entertainment of such motions would serve no time-saving purpose, but on the contrary would probably lead to a wasteful expenditure of time, it is our opinion that such motions may not be entertained and passed on to the agency boards, at least in proceedings where a hearing officer alone is taking the evidence." (*Id.* at p. 6.) We concluded, "motions based upon want of evidence to make a prima facie case are not an authorized part of administrative procedure," but if such a motion is granted, the question will be whether the procedural error is prejudicial. (*Id.* at pp. 7-8.) "If it be true that as a matter of law the evidence of respondent did not entitle him to any relief, . . . then we ought not to set aside the order of dismissal . . . ." (*Id.* at p. 8.)

The hearing in *Frost* was subject to provisions of the Administrative Procedure Act. (*Frost, supra,* 190 Cal.App.2d 1, 4-5, citing Gov. Code, § 11517.) The hearing at issue in this case was subject to the same provisions. (§ 3066 [expressly stating that Gov. Code, § 11517 and other provisions of the Administrative Procedure Act apply to protests to the New Motor Vehicle Board].) Government Code section 11517 continues to provide, as it did when *Frost* was decided, that if a contested case is heard by a hearing officer, the hearing officer shall prepare a proposed decision for the board, and the board itself shall not decide any case without affording the parties the opportunity to present oral or written argument before the board.

Nevertheless, the case now before us does not raise the same concerns as the proceedings in *Frost*. In *Frost*, the hearing officer weighed the evidence,

whereas a trial court would not weigh the evidence in passing on a motion for nonsuit. (*Frost, supra,* 190 Cal.App.2d 1, 5, 7.) In the case before us, there was no weighing of evidence and no need to weigh any evidence, because it was undisputed that DaimlerChrysler was ceasing to manufacture vehicles with the Plymouth name.

Moreover, *Frost* said a dismissal would not warrant reversal if it was harmless. Here, any evidence concerning Nader's performance of its obligations under the franchise agreement or any of the other "good cause" factors in section 3061 (see fn. 3, p. 634, *ante*) would have been excluded as irrelevant. Thus, section 3066, subdivision (a), states protest hearings are subject to Government Code section 11513, which provides in subdivision (f): "The presiding officer has discretion to exclude evidence if its probative value is substantially outweighed by the probability that its admission will necessitate undue consumption of time." Here, the ALJ clearly understood that any evidence of the "good cause" factors in section 3061 would have been irrelevant in light of the manufacturer's discontinuation of the manufacture of the product.

We conclude the Board properly dismissed Nader's protest.

## IV. *Due Process*

Additionally, the dismissal in this case did not violate Nader's due process rights.[6]

" 'Under the California Constitution, the extent to which procedural due process is available depends on a weighing of private and governmental interests involved. The required procedural safeguards are those that will, without unduly burdening the government, maximize the accuracy of the resulting decision and respect the dignity of the individual subjected to the decisionmaking process. Specifically, determination of the dictates of due process generally requires consideration of four factors: the private interest that will be affected by the individual action; the risk of an erroneous deprivation of this interest through the procedures used and the probable value, if any, of additional or substitute safeguards; the dignitary interest of informing individuals of the nature, grounds and consequences of the action and of enabling them to present their side of the story before a responsible

---

[6]Nader waived the due process matter by raising it for the first time in its reply brief, but we consider the matter because it was raised in DaimlerChrysler's respondent's brief.

governmental official; and the government interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail. [Citations.]' " (*Oberholzer v. Commission on Judicial Performance* (1999) 20 Cal.4th 371, 390-391 [84 Cal.Rptr.2d 466, 975 P.2d 663].)

■ Here, Nader was given full opportunity to challenge Daimler-Chrysler's evidence that it was discontinuing the manufacture of Plymouths. Nader did not contend and did not submit any evidence that DaimlerChrysler will continue manufacturing Plymouths.

Nader contends it was entitled to a hearing on the merits of the "good cause" factors listed in section 3061 (see fn. 3, p. 634, *ante*), e.g., whether Nader performed its obligations under the franchise. However, section 3061 expressly states the listed factors are not exclusive, and "the board shall take into consideration the existing circumstances." Where a franchisor discontinues manufacture of the product, such circumstance is clearly good cause to terminate the franchise, rendering moot such issues as whether the franchisee has complied with its obligations.

We conclude the Board had implied authority to dismiss the protest and properly dismissed Nader's protest.

We recognize Nader has contended that DaimlerChrysler will repackage Plymouth vehicles under other brands, and that Nader is being put at a disadvantage by DaimlerChrysler's actions. However, while these contentions may afford a basis for judicial action under section 3050, subdivision (e)—a point on which we express no opinion—they do not constitute grounds for an administrative finding that there is no good cause for termination of the Plymouth franchise.

V. *No Abuse of Discretion Re: Good Cause Factors*

Nader contends the Board committed a prejudicial abuse of discretion by failing to proceed in a manner required by law, by refusing to conduct a hearing on the good cause factors listed in section 3061. We disagree.

Nader claims that, since section 3061 says the Board shall take into consideration the existing circumstances "including" the listed factors, the

Board is required to take evidence on each of the listed factors. We disagree. The Board need not take evidence on irrelevant matters. Where a franchise is terminated because the manufacturer stops making the product, a dealer's proof that it has performed its obligations will not avoid termination. Nader claims in a footnote that the possibility the Board may consider discontinuation of the Plymouth line as a predominant factor justifying termination is "nothing more than speculation" because Nader was never permitted to present evidence as to the other good cause factors. However, Nader fails to meet its burden as appellant to show grounds for reversal; Nader fails to state what evidence it wanted to introduce which could possibly prevent DaimlerChrysler from terminating the Plymouth franchise in light of the undisputed discontinuation of the Plymouth line. Nader simply states the Board precluded the admission of any evidence as to whether an enforceable agreement existed, and precluded argument as to whether the decision could be conditioned upon compliance with such agreement.

Nader appears to think the Board could issue a decision sustaining Nader's protest to termination, without requiring DaimlerChrysler to continue manufacturing Plymouth vehicles. In Nader's view, DaimlerChrysler could still proceed with termination, though such termination would subject it to damages in a court action filed by Nader. Thus, Nader seeks to use the Board as a predicate fact finder to make findings which Nader hopes to use in a subsequent court action, apparently on some breach of contract theory. However, the courts have jurisdiction over such claims, which may be initiated directly in court. (§ 3050, subd. (e).) Nader cites nothing authorizing it to use the Board in this manner.

Under a separate heading, Nader argues the Board committed a prejudicial abuse of discretion, in that the Board's ruling dismissing the protest was not supported by the Board's finding that it had subject matter jurisdiction. However, the finding of subject matter jurisdiction is not inconsistent with dismissal of the protest.

VI. *No Inconsistent Findings*

Nader contends the Board committed a prejudicial abuse of discretion by making inconsistent findings. We disagree.

Nader notes the Board's written ruling dismissed the protest "without prejudice" because "it is possible for [Nader] to file a protest containing a

request for relief within the Board's jurisdiction." Nader says this "finding" is inconsistent with other findings in which the Board found (1) it had jurisdiction over the protest, (2) it could not grant the remedy of ordering the manufacturer to stay in business, (3) it could not order DaimlerChrysler to award a Jeep franchise to Nader, (4) it could not award damages on Nader's complaint that DaimlerChrysler stood silent while Nader spent money on remodeling, and (5) Nader could have a viable claim for damages for breach of contract in court.

Nader argues these findings effectively precluded Nader from filing a new protest. However, Nader fails to show how this claimed inconsistency provides any basis for reversal on appeal. We therefore need not address DaimlerChrysler's contention that Nader waived this issue.

## DISPOSITION

The judgment is affirmed. The New Motor Vehicle Board and Daimler-Chrysler shall recover their costs on appeal.

Nicholson, J., and Raye, J., concurred.